Jacobo RAMOS–VASQUEZ, Petitioner,

v.

IMMIGRATION & NATURALIZATION SERVICE, Respondent.

No. 93–70837.

United States Court of Appeals, Ninth Circuit.

Submitted Feb. 9, 1995 *.

Decided June 16, 1995.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34–4.

Joseph M. Bacho, San Diego, CA, for petitioner.

Alison R. Drucker, Atty., Dept. of Justice, Civ. Div., Office of Immigration Litigation, Washington, DC, for respondent.

Before: TROTT, FERNANDEZ, and T.G. NELSON, Circuit Judges.

Opinion by Judge T.G. NELSON; Concurrence by Judge TROTT.

## OPINION

T.G. NELSON, Circuit Judge:

Jacobo Ramos–Vasquez ("Ramos–Vasquez"), a native and citizen of Honduras, petitions for review of a decision of the Board of Immigration ("BIA" or "the Board"). The BIA denied Ramos–Vasquez's request for withholding of deportation under 8 U.S.C. § 1253(h) and for asylum under 8 U.S.C. § 1158(a). Finding Ramos–Vasquez not credible, the BIA majority refused to consider whether his testimony regarding the Hon-

duran army's torture and summary execution of deserters established a well-founded fear of persecution. As the dissenting member of the Board observed, the BIA's finding of adverse credibility was not substantiated by the record. We have jurisdiction pursuant to 8 U.S.C. § 1105a, and we grant the petition, vacate the BIA order, and remand.

## FACTS AND PROCEDURAL HISTORY

Ramos–Vasquez, a native and citizen of Honduras, was born in 1954, and drafted into the Honduran army at the age of fourteen. Ramos–Vasquez claims that although most draftees are released after one year, he was not permitted to leave the army, in spite of his repeated requests for a discharge. He asserts that because he was a good candidate, he was placed in the intelligence unit, from which voluntary departure was not permitted. After serving in the army for thirteen years, he deserted in October 1982, allegedly because he was ordered to execute a friend who had deserted. According to Ramos–Vasquez, military deserters are routinely punished by being submerged, naked and handcuffed, in a tank of water for nine days, after which they are summarily executed, and their bodies dumped in a river. Ramos–Vasquez testified that on nine occasions he was held for 24 hours in the water tank for refusing to execute deserters.

Sometime after deserting the army, Ramos–Vasquez left Honduras for Guatemala. He entered the United States on March 12, 1983, where he found work as a gardener. On October 21, 1988, he received an Order to Show Cause from the Immigration and Naturalization Service ("INS"), and at a hearing before an immigration judge ("IJ") on November 16, 1988, conceded deportability and obtained leave to apply for asylum, withholding of deportation, or alternatively, voluntary departure.

At his hearing for asylum on May 2, 1989, Ramos–Vasquez testified as to his compulsory thirteen-year service with the army, his conscientious objection to orders to extort money from farm workers on behalf of the army (which orders he says he followed), and to orders to shoot deserters (which orders he says he refused to follow). He asserted that

the army will torture and kill him for deserting if he returns to Honduras and maintained that he has knowledge through a friend that the army is still looking for him. He also testified that in 1978 he was twice shot in the head by a soldier who mistook him for his father. Finally, Ramos–Vasquez presented a number of letters testifying to his good character and to his reliability as a worker.

The IJ found that "[w]hile ... the respondent [is], in every way, a credible witness, he simply has not presented evidence to show a clear probability that he would be persecuted in Honduras by the government forces, based on his military desertion." After conducting its own review of the record, the BIA majority affirmed the IJ's finding that Ramos–Vasquez had failed to make a successful claim for withholding of deportation or for asylum. The majority found that the water tank punishment allegedly meted out for Ramos–Vasquez's refusal to execute other soldiers was one "common for refusing to follow orders" and thus not "persecutory in nature." The majority did not consider whether Ramos–Vasquez's fear that he would himself be executed as a deserter should he return constituted a well-founded fear of persecution, apparently because of its conclusion that "the respondent is not a credible witness.... [and its] doubt that the respondent would voluntarily spend so much time in a unit that ostensibly carried out summary executions if in fact the respondent was so repulsed by such duties."

The dissenting member of the Board was "baffled by the majority's statement that the respondent is not a credible witness." She noted that the "affidavits indicate the respondent's reputation for honesty," and that "there is nothing of record indicating any propensity by the respondent for fabricating evidence." She further indicated that she would find "convincing evidence of persecution" on the basis of Ramos–Vasquez's testimony both as to his being ordered to summarily execute other soldiers and as to the punishment he endured in the water tank for refusing to follow such orders. Ramos–Vasquez timely appealed the BIA's decision.

## STANDARD OF REVIEW

█ This court reviews the BIA's denial of asylum for an abuse of discretion. *Acewicz v. INS*, 984 F.2d 1056, 1061 (9th Cir. 1993). The factual findings underlying the decision, including whether the alien has proved a well-founded fear of persecution, are reviewed for substantial evidence. *Shirazi–Parsa v. INS*, 14 F.3d 1424, 1427 (9th Cir.1994). Under this standard, a court must review the findings "by a slightly stricter scrutiny than the clear error standard." *Id.* (quotation omitted). A denial of asylum "must be upheld if 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *INS v. Elias–Zacarias*, 502 U.S. 478, 481, 112 S.Ct. 812, 815, 117 L.Ed.2d 38 (1992) (quoting 8 U.S.C. § 1105a(a)(4)).

█ This court reviews credibility findings by the IJ and the BIA for substantial evidence. *Turcios v. INS*, 821 F.2d 1396, 1399 (9th Cir.1987). The BIA's denial of withholding of deportation pursuant to section 243(h) is reviewed under the substantial evidence standard. *Berroteran–Melendez v. INS*, 955 F.2d 1251, 1255 (9th Cir.1992). Legal issues are reviewed *de novo*. *Hartooni v. INS*, 21 F.3d 336, 340 (9th Cir.1994).

### I. Credibility

█ We agree with the BIA dissent that the majority's credibility decision is baffling. After hearing his testimony and observing his demeanor at the asylum hearing, the IJ found Ramos–Vasquez "to be, in every way, a credible witness." Affidavits and letters submitted by Ramos–Vasquez further attest to his honesty and good moral character. In short, the record overwhelmingly contradicts the BIA's finding of adverse credibility.[1]

The majority's "doubt" that Ramos–Vasquez "would voluntarily spend so much time in a unit that ostensibly carried out summary executions if in fact the respondent was so repulsed by such duties" represents circular reasoning. Ramos–Vasquez repeatedly explained that he was not permitted to leave the army, though he often requested to be

discharged. The majority apparently rejects this explanation, though it gives no reason for doing so. In effect, it finds Ramos–Vasquez incredible simply because it does not wish to believe him. Because the majority's finding of adverse credibility is not based on substantial evidence of record, it must be rejected.

### II. The Shooting of Ramos–Vasquez

█ The BIA did not abuse its discretion in finding that the shooting of Ramos–Vasquez by a soldier who mistook him for his father does not constitute evidence of persecution. While we have "held that acts of violence against a petitioner's friends or family members may establish a well-founded fear, notwithstanding an utter lack of persecution against the petitioner herself[,] [w]e have required ... that this violence create a pattern of persecution closely tied to the petitioner. Allegations of isolated violence are not enough." *Arriaga–Barrientos v. INS*, 937 F.2d 411, 414 (9th Cir.1991) (citation omitted). Because Ramos–Vasquez has not argued that the shooting was in any way due to his own political opinion, we agree with the BIA that "[a] case of mistaken identity, at least under these circumstances, is not tantamount to persecution."

### III. Fear of Persecution by Rebels

█ Ramos–Vasquez argues here, as he did in his application for asylum, that he fears reprisals by anti-military forces who will impute to him the actions of the military if he returns to Honduras. However, he offers no evidence in support of this claim. Because mere apprehension is not enough to establish a well-founded fear entitling an alien to asylum, *see Blanco–Comarribas v. INS*, 830 F.2d 1039, 1042 (9th Cir.1987), we find that the BIA did not abuse its discretion in rejecting this claim.

### IV. Punishment for Desertion as Persecution

█ Because the BIA majority found Ramos–Vasquez not credible, it did not explicit-

---

1. The *post hoc* reasoning offered by the INS in its brief to this court was not advanced by the BIA and thus does not support the INS's conclusion that Ramos–Vasquez lacked credibility.

ly consider whether his testimony regarding treatment of military deserters constituted evidence establishing his eligibility for withholding of deportation or for asylum. The Board implied its dissatisfaction with the substance of Ramos–Vasquez's appeal by stating at the end of the decision, "[m]oreover, we do not find the punishment meted out to the respondent to be persecutory in nature.... If the Honduran army desires to punish its soldiers by placing them in water-filled tanks for 24 hours, this Board is in no position to pass judgment." However, when the BIA introduces reasons with words like "moreover" or "in addition," this court does not presume that those reasons constitute an independent basis for dismissal. *See Kotasz v. INS,* 31 F.3d 847, 855 n. 13 (9th Cir.1994); *Sarria–Sibaja v. INS,* 990 F.2d 442, 444 (9th Cir.1993).

■ In the absence of substantial evidence supporting a finding of adverse credibility, the BIA is required explicitly to consider a petitioner's claims for asylum and withholding of deportation. It must consider the two forms of relief separately. *See Arteaga v. INS,* 836 F.2d 1227, 1233 (9th Cir.1988); *Bolanos–Hernandez v. INS,* 767 F.2d 1277, 1283 (9th Cir.1984). Both the BIA and the INS here failed to distinguish between the "two distinct forms of relief" provided by 8 U.S.C. § 1253(h), section 243(h) of the Immigration and Nationality Act ("the Act") (withholding of deportation) and 8 U.S.C. § 1158(a), section 208(a) of the Act (asylum). *INS v. Cardoza–Fonseca,* 480 U.S. 421, 428 n. 6, 107 S.Ct. 1207, 1211 n. 6, 94 L.Ed.2d 434 (1987). The Board's failure to be explicit about which standard it is applying constitutes reversible error. *Ghebllawi v. INS,* 28 F.3d 83, 86 (9th Cir.1994).

■ To qualify for withholding of deportation, an alien must show that he faces a clear probability of persecution upon return to his native country, or that he will "more likely than not" be subjected to persecution there on account of race, religion, nationality, membership in a particular social group, or political opinion. *Cardoza–Fonseca,* 480 U.S. at 423, 107 S.Ct. at 1208–09 (citing *INS v. Stevic,* 467 U.S. 407, 429–30, 104 S.Ct. 2489,

2501, 81 L.Ed.2d 321 (1984); 8 U.S.C. § 1253(h), section 243(h) of the Act).

■ The evidentiary standard required for asylum is considerably less stringent, requiring only a showing by the alien that " 'persecution is a reasonable possibility.' " *Cardoza–Fonseca,* 480 U.S. at 440, 107 S.Ct. at 1217 (quoting *Stevic,* 467 U.S. at 424–25, 104 S.Ct. at 2498). To qualify for asylum, the alien must show he is a statutory "refugee," by providing evidence of "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* at 423, 107 S.Ct. at 1209 (quoting 8 U.S.C. § 1101(a)(42)). If he meets this definition, "[n]o further showing, that he or she 'would be' persecuted is required." *Id.* at 441, 107 S.Ct. at 1218. Thus, for example, he need not show the government is presently looking for him. *Blanco–Comarribas,* 830 F.2d at 1043.

The "well-founded fear" test consists of a subjective and an objective component: "[t]he subjective component requires that the fear be genuine, while the objective component requires a showing by credible, direct, and specific evidence in the record, of facts that would support a *reasonable* fear that the petitioner faces persecution." *Rodriguez–Rivera v. INS,* 848 F.2d 998, 1002 (9th Cir. 1988) (citations and quotations omitted).

While both prongs require credible testimony on the part of the alien, the objective prong further requires the alien to substantiate his claim of past or anticipated future persecution with objective facts. These may be established through documentary evidence, or lacking that, the alien's own testimony, "if it is credible, persuasive, and refers to *specific* facts that give rise to an inference that [he] has been or has a good reason to fear that he ... will be singled out for persecution on one of the specified grounds listed in section 208(a)." *Blanco–Comarribas,* 830 F.2d at 1042–43 (citations and quotations omitted).

Because "[p]ersecutors are hardly likely to provide their victims with affidavits attesting to their acts of persecution," *Bolanos–Hernandez,* 767 F.2d at 1285, an alien's own testimony, if unrefuted and credible, is also

sufficient for withholding of deportation, though the alien must further show that "the threat is a serious one.... What matters is whether the group making the threat has the will or the ability to carry it out." *Id.*

Ramos–Vasquez asserts that "[n]ewspaper accounts, Amnesty International Reports and the House and Senate Reports on Human Rights Conditions in Honduras show the blatant disregard for human rights in Honduras." For unknown reasons, he never submitted any of these reports to the IJ. While Ramos–Vasquez's failure to provide background evidence "detracts from" his claim, as the BIA notes, his testimony, if taken as credible, likely supports a claim for asylum if not for withholding of deportation.

In rejecting Ramos–Vasquez's claim of persecution, the BIA focused on the punishment he was allegedly forced to undergo when he refused to execute deserters. It appears to have adopted the IJ's conclusion that being ordered to summarily execute deserters in the first place was merely an "unpleasant" military duty, and to have ignored entirely Ramos–Vasquez's fear that he, too, will be executed for desertion should he return to Honduras. The BIA majority characterized Ramos–Vasquez's claim as follows: "in essence, the respondent maintains that while a sovereign nation has the right to punish deserters from its military forces, he should not be expected to carry out repugnant acts."

Like the BIA dissent, we "would characterize being illegally ordered to execute someone [as] something more than an 'unpleasant' duty," or even a "repugnant" one as the BIA majority suggests. We perceive such orders to be contrary to the basic rules of human conduct, and are inclined to agree with the United Nations High Commissioner for Refugees (UNHCR) *Handbook on Procedures and Criteria for Determining Refugee Status*, section 171 (1979), which advises that

[w]here ... the type of military action, with which an individual does not wish to be associated, is condemned by the international community as contrary to basic rules of human conduct, punishment for desertion ... could, in light of all other

requirements of the definition, in itself be regarded as persecution.

While the United Nations Handbook is not binding on the INS, the Supreme Court has observed that it "provides significant guidance" in construing the United Nations Protocol Relating to the Status of Refugees, 19 U.S.T. 6223, T.I.A.S. No. 6577, to which the United States acceded in 1968, and which Congress sought to follow in enacting United States refugee law. *See Cardoza–Fonseca,* 480 U.S. at 437–39 and 439 n. 22, 107 S.Ct. at 1216–17 and 1217 n. 22. If the Honduran military regularly tortures and summarily executes deserters, as Ramos–Vasquez claims, he would seem to have established a well-founded fear of persecution if he can show that he would be persecuted for one of the five grounds listed in the Act.

Ramos–Vasquez bases his claim on persecution for his political neutrality. Under the case law of the Ninth Circuit, political neutrality constitutes political opinion for purposes of asylum. *See, e.g., Arriaga–Barrientos v. INS,* 937 F.2d at 413; *Arteaga,* 836 F.2d at 1231–32; *Bolanos–Hernandez,* 767 F.2d at 1286–87. The petitioner must not merely avow his political neutrality, however, but must also show that this opinion was articulated sufficiently for it to be the basis of his past or anticipated persecution. *Arriaga–Barrientos,* 937 F.2d at 414.

Both this court and the BIA have recognized conscientious objection to military service as grounds for relief from deportation, where the alien would be required to engage in inhuman conduct were he to continue serving in the military. *Id.; In re A–G–,* 19 I & N Dec. 502, 1987 BIA Lexis 16 *10–11 (1987) (citing the U.N. Handbook at 39–41 (1979)), *aff'd, M.A. v. INS,* 899 F.2d 304 (4th Cir.1990) (en banc).

This court held in *Barraza Rivera v. INS* that "punishment based on objection to participation in inhuman acts as part of forced military service is 'persecution' within the meaning of 8 U.S.C. § 1101(a)(42)(A)." 913 F.2d 1443, 1453 (9th Cir.1990). Like Ramos–Vasquez, Barraza alleged he was forcibly recruited into the military, and abandoned service because he did not want to participate in illegal killings. *Id.* at 1446, 1450. This court

observed that because it found Barraza "does not object to military service in general but to being forced to perform inhuman acts under military orders," he could be classified as a conscientious objector. *Id.* at 1450. While *Barraza* based its conclusion in part on a theory of religious objection which has since been discredited, "[i]mputed political belief is still a valid basis for relief." *Canas–Segovia v. INS,* 970 F.2d 599, 601 (9th Cir. 1992). Ramos–Vasquez is clearly not a "draft evader"; he served in the military for thirteen years and hoped for, but was repeatedly denied, an opportunity to leave the service honorably. He credibly testified that he deserted the military to avoid engaging in inhuman conduct, and now appears reasonably to fear disproportionately severe punishment—torture and summary execution—for desertion should he return to Honduras.

Honduras holds itself out as a democratic nation. Its constitution provides, *inter alia,* for the inviolability of human life and due process of law; it explicitly forbids torture and capital punishment. *See* Constitution of the Republic of Honduras 1982 (Decree No. 131 of January 11, 1982) (Washington, Organization of American States, 1982), Title III, Chapters I–II, Articles 59–94. Because Ramos–Vasquez deserted in 1982, this version of the Constitution would apply to his case.[2] While, as the BIA observes, "Honduras is not bound by the United States' constitutional notions of due process in relation to cruel and unusual punishment," it is legally bound by its own.

Where a nation espouses democracy and the rule of law, desertion may be the most practical way of politically dissenting from military practices which do not conform to the stated national policy. If a soldier deserts in order to avoid participating in acts condemned by the international community as contrary to the basic rules of human conduct, and is reasonably likely to face persecution should he return to his native country, his desertion may be said to constitute grounds for asylum based on political opinion.[3]

## V. Conclusion

We remand to the BIA for consideration of whether the record, together with any supplemental information that Ramos–Vasquez may wish to supply in a motion to reopen, supports a finding that Ramos–Vasquez's desertion qualifies as a political opinion for which he is reasonably likely to face persecution.

PETITION FOR REVIEW GRANTED. The BIA's decision and order of September 10, 1993, are VACATED and the case is REMANDED to the BIA for further proceedings.

TROTT, Circuit Judge, concurring in the result:

I agree that we must remand this matter for further proceedings because of the peculiar manner in which the majority of the Board handled Ramos–Vasquez's credibility, but I'm not at all certain that the guidance the majority offers the BIA in Part IV regarding the execution of military deserters is sound. Thus, I do not join in that section of the majority's opinion.

---

2. The previous (1965) version of the Constitution of the Republic of Honduras contains substantially similar provisions, although in slightly different wording and format. The 1965 version of the Constitution would apply to the torture and killing of deserters reported and objected to by Ramos–Vasquez during his service in the military. *See* Constitution of the Republic of the Honduras 1965 (Washington, Pan American Union, 1966), Title III, Chapters I–IV, Articles 51–84, and Title XI, 319–20.

3. In the discussion in Part IV, we are not holding that the BIA is required to grant Ramos–Vasquez relief. Rather, we wish to point out that Ramos–Vasquez has said enough to raise a claim of political neutrality, and that his claims should be considered on that basis, rather than being simply rejected as those of a deserter from his country's armed forces.