67 F.3d 308
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Mario Antonio RIZO-VELASQUEZ, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 95-70139.
 United States Court of Appeals, Ninth Circuit.
 Submitted Sept. 18, 1995.*
Decided Sept. 29, 1995.
 
 Before: BROWNING, GOODWIN, and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Mario Antonio Rizo-Velasquez, a native and citizen of Nicaragua, petitions for review of the Board of Immigration Appeals' ("BIA") decision affirming the order of an immigration judge ("IJ"), denying Rizo-Velasquez's application for asylum and withholding of deportation under sections 208(a) and 243(h) of the Immigration and Nationality Act ("INA"), 8 U.S.C. Secs. 1158(a) and 1253(h), and granting him voluntary departure. We have jurisdiction pursuant to 8 U.S.C. Sec. 1105a(a), and we deny the petition.
 
 
 3
 * Background
 
 
 4
 On November 8, 1989, the Immigration and Naturalization Service ("INS") issued Rizo-Velasquez an order to show cause why he should not be deported as an alien who had entered the United States without inspection in violation of section 241(a)(2) of the INA, 8 U.S.C. Sec. 1251(a)(2). Rizo-Velasquez, represented by counsel, conceded deportability, but sought asylum and withholding of deportation or in the alternative voluntary departure.
 
 
 5
 Rizo-Velasquez's testimony before the IJ and his statements in his application can be summarized as follows.
 
 
 6
 Rizo-Velasquez testified that he and his family were identified as Somoza supporters. His father had been a driver for the personal physician to President Somoza and left Nicaragua after the Sandinistas came to power. Rizo-Velasquez's father obtained asylum in the United States, where he currently resides. Rizo-Velasquez's step-father was a lieutenant at a military academy under the Somoza regime and was imprisoned for four years after the Sandinistas came to power. He was tortured while in prison and was an invalid until he died in 1988.
 
 
 7
 At the time of the Sandinista revolution in 1979, Rizo-Velasquez was a driver for the Nicaraguan government under Somoza. After the Sandinistas came to power, Rizo-Velasquez continued as a driver for the Sandinista government, for approximately nine years, until he left the country in 1988. Rizo-Velasquez attempted to join the local Sandinista Defense Committee (CDS) but was rejected because of his family's connections to the Somoza regime. He did perform revolutionary guard duty in order to qualify for a food ration card.
 
 
 8
 Rizo-Velasquez stated that he had no political problems with the Sandinistas government until he was called up for military reserve duty. All males of his age were required to participate in the reserves. He was mobilized into the military on four to six occasions, lasting from one to six months. As part of his reserve duty, he was sent to the mountains to fight the Contras. Rizo-Velasquez testified that former supporters of Somoza or their sons were selected for the front lines and were given the most dangerous assignments, while those perceived to be supportive of the Sandinistas were given safer guard duties.
 
 
 9
 Rizo-Velasquez deserted from his last mobilization in July 1988. He returned to his government job until August 1988 when he left Nicaragua. He had been issued a passport in 1987 by the Sandinista government under the ruse that he needed to go to Guatemala to pick up a package sent by a relative. After he left Nicaragua, his wife's food ration card was confiscated and his sister was told that he would be killed if he returned to Nicaragua.
 
 
 10
 Rizo-Velasquez stated that he was aware of the change in government in Nicaragua and that military draft and food ration cards had been eliminated, but stated that he still feared returning to Nicaragua because (1) the Sandinistas still controlled the military and (2) the Contras might try to kill him for fighting against them.
 
 
 11
 The IJ found that Rizo-Velasquez had failed to met his burden of establishing past persecution or a well-founded fear of future persecution on account of political opinion or any other enumerated ground. Consequently, the IJ denied Rizo-Velasquez's application for asylum and withholding of deportation, but granted him voluntary departure.
 
 
 12
 The BIA reviewed the entire record and adopted the IJ's decision. Rizo-Velasquez timely petitions for review.
 
 II
 Analysis
 A. Scope and Standard of Review
 
 13
 Because the BIA clearly incorporated the IJ's decision, "we treat the IJ's statement of reasons as the BIA's and review the IJ's decision."[1] See Alaelua v. INS, 45 F.3d 1379, 1382 (9th Cir.1995). "The factual findings underlying the decision are reviewed for substantial evidence, and the IJ's determination should not be reversed absent compelling evidence of persecution." Kazlauskas v. INS, 46 F.3d 902, 905 (9th Cir.1995); INS v. Elias-Zacarias, 502 U.S. 478, 483-84 (1992) (under substantial evidence standard, the BIA's determination will be upheld unless "the evidence that [the alien] presented was so compelling that no reasonable fact finder could fail to find the requisite fear of persecution").
 
 B. Merits
 
 14
 To establish eligibility for asylum based on a well-founded fear of future persecution, asylum applicants must show both a genuine subjective fear of persecution and an objectively reasonable fear. Acewicz v. INS, 984 F.2d 1056, 1061 (9th Cir.1993). The burden is on the applicant to meet this standard. Id. "The objective component requires a showing by 'credible, direct, and specific evidence of facts showing a reasonable fear of persecution' " on account of one of the enumerated grounds. Id. (quoting Rodriguez-Rivera v. INS, 848 F.2d 998, 1002 (9th Cir.1988) (per curiam)).
 
 
 15
 Here, substantial evidence supports the BIA's determination that Rizo-Velasquez failed to meet his burden of proof. The evidence presented by Rizo-Velasquez does not support an objective well-founded fear of persecution. Rizo-Velasquez lived unharassed in Nicaragua for almost nine years after the Sandinista revolution and maintained his job as a driver for the Sandinista led government. While Rizo-Velasquez and others connected with the Somoza regime may have been discriminated against in the selection of their military assignments based on their perceived political opposition to the Sandinista regime, this does not by itself establish a well-founded fear of persecution.
 
 
 16
 First, as Rizo-Velasquez concedes, a requirement of compulsory military service alone is not sufficient to establish persecution. See Rodriquez-Rivera v. INS, 848 F.2d 998, 1005 (9th Cir.1988); Abedini v. INS, 971 F.2d 188, 191 (9th Cir.1992). Second, Rizo-Velasquez was not required to engage in "inhuman conduct" as part of his military service. Cf. Ramos-Vasquez v. INS 57 F.3d 857, 863 (9th Cir.1995) (if alien required to engage in inhuman conduct as part of military service, then requirement of military service could be persecution). Finally, Rizo-Velasquez's application for asylum is further undermined by the changes in Nicaragua since 1990 when the Sandinista government was voted out of office and compulsory military service was ended. Moreover, Rizo-Velasquez provide no evidence that the current Nicaraguan government was unable or unwilling to protect him from the Sandinistas in the military or the remaining Contra forces, nor did he provide objective evidence supporting his subjective fear of persecution. See Acewicz, 984 F.2d at 1061; Blanco-Comarribas v. INS, 830 F.2d 1039, 1041-42 (9th Cir.1987). Given the evidence presented, we cannot say that "a reasonable factfinder would be compelled to conclude that [Rizo-Velasquez] was subject to persecution." See Prasad v. INS, 47 F.3d 336, 339 (9th Cir.1995).[2]
 
 
 17
 Because the standard for withholding of deportation is higher than the standard for a grant of asylum and because Rizo-Velasquez has failed to meet the lower standard for eligibility for asylum, we also affirm the BIA's denial of withholding of deportation. See Acewicz, 984 F.2d at 1062.
 
 
 18
 PETITION FOR REVIEW DENIED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Because the BIA incorporated the IJ's decision into its own, we find no merit in Rizo-Velasquez's contention that the BIA abused its discretion by not reciting the facts and legal analysis contained in the IJ's decision in its decision. See Ghaly v. INS, No. 93-70926, slip op. 7801, 7810 (9th Cir. July 6, 1995) ("while we will not tolerate 'boilerplate' opinions, we will not impose unnecessarily burdensome or technical requirements on the [BIA]")
 
 
 [2]
 To the extent Rizo-Velasquez's claim is based on persecution suffered by family members, this claim fails too. While persecution or "acts of violence against an [alien's] friends or family may establish a well-founded fear" of persecution, see Arriaga-Barrientos v. INS 937 F.2d 411, 414 (9th Cir.1991), it "do[es] not necessarily establish a well-founded fear of persecution absent a pattern of persecution tied to the [alien]." Prasad, 47 F.3d at 340. Here, no such pattern or connection has been shown
 Likewise, to the extent Rizo-Velasquez contends that he is entitled to asylum based solely on past persecution, this claim fails too. While past persecution alone may be sufficient, it is limited to situations in which the applicant has suffered "under atrocious forms of persecution." Acewicz, 984 F.2d at 1062 (citing Matter of Chen, Int.Dec. 3104 at 4 (BIA1989)); Desir v. Ilchert, 840 F.2d 723, 729 (9th Cir.1988). Here, no such showing was made.