89 F.3d 601
 96 Cal. Daily Op. Serv. 5186, 96 Daily Journal
D.A.R. 8385
Safi MOSA, Petitioner-Appellant,
v.
Richard K. ROGERS, District Director, Immigration and
Naturalization Service, Los Angeles; Immigration
and Naturalization Service, Respondents-Appellees.
 No. 95-56342.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 4, 1996.
Decided July 12, 1996.
 
 Donald Ungar, Simmons, Ungar, Helbush, Steinberg & Bright, San Francisco, California, for petitioner-appellant.
 John B. Bartos, Assistant United States Attorney, Los Angeles, California, for respondents-appellees.
 Appeal from the United States District Court for the Central District of California; Harry L. Hupp, District Judge, Presiding, No. CV-95-01531-HLH.
 Before: FLETCHER, BEEZER and KLEINFELD, Circuit Judges.
 BEEZER, Circuit Judge:
 
 
 1
 Safi Mosa, a native and citizen of Afghanistan, appeals the district court's denial of his petition for a writ of habeas corpus challenging the Board of Immigration Appeals' ("BIA") dismissal of his appeal from an Immigration Judge's ("IJ") decision finding him excludable as charged and denying his applications for asylum and withholding of deportation. Mosa contends that the BIA's decision should be reversed because it was based on an adverse credibility finding that was unsupported by substantial evidence. We have jurisdiction under 28 U.S.C. § 2253. We reverse and remand.I
 
 
 2
 Safi Mosa fled Afghanistan to Pakistan in January, 1990 because of a claimed fear of the Afghan security force (the "KHAD"). After spending several months in Pakistan, he attempted to enter the United States at Los Angeles on November 6, 1990. Mosa was detained and placed in exclusion proceedings pursuant to 8 U.S.C. § 1226. Mosa applied for asylum and withholding of deportation pursuant to 8 U.S.C. §§ 1158(a) and 1253(h).
 
 
 3
 At the exclusion hearing, Mosa testified that he feared persecution if returned to Afghanistan due to events which began in 1989. Mosa stated that in 1989, while he was a student at a metal-working technical school in Kabul, he began supplying the mujahidin rebels with supplies and repairing weapons for them at the school. Later that year, Mosa testified, he was arrested by the KHAD, accused of aiding the mujahidin, and detained for three months. According to Mosa, he never admitted assisting the mujahidin during his detention despite being frequently interrogated and tortured. Mosa believes his arrest was prompted by spies at the technical school.
 
 
 4
 Mosa further testified that after his detention he was taken to a government military base and was conscripted into the Afghan army. He said that he was given approximately one week of training and was then forced to parachute into an area near Pakistan. Once he landed, he testified, he deserted the army and escaped to Pakistan with the help of the mujahidin.
 
 
 5
 The IJ found Mosa to be excludable and denied Mosa's applications for asylum and withholding of deportation. The IJ's decision was partially based on his disbelief of Mosa's testimony because "some of it [was] exaggeration and some of it [was] misperception on his part." The IJ did not base this finding on Mosa's demeanor, but instead based it solely on his evaluation of Mosa's testimony.
 
 
 6
 Mosa appealed to the BIA, and the BIA affirmed the decision of the IJ based solely on the IJ's "adverse credibility determination."[1] After conducting an independent review of the record, the BIA adopted the analysis of the IJ and determined that the IJ's adverse credibility finding was correct. Mosa petitioned the district court for a writ of habeas corpus. An alien's sole means for obtaining judicial review of a final order of exclusion is a petition for a writ of habeas corpus. 8 U.S.C. § 1105a(b); Castillo-Magallon v. INS, 729 F.2d 1227, 1228 (9th Cir.1984). The district court denied his petition.
 
 II
 
 7
 We review de novo a district court's decision to grant or deny a petition for habeas corpus. Desir v. Ilchert, 840 F.2d 723, 726 (9th Cir.1988). We review the factual findings underlying the BIA's denial of asylum and withholding of deportation under the substantial evidence standard. Turcios v. INS, 821 F.2d 1396, 1398 (9th Cir.1987). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.
 
 
 8
 The Attorney General has discretion to grant an alien asylum if he qualifies as a "refugee" under 8 U.S.C. § 1101(a)(42)(A). 8 U.S.C. § 1158(a). A refugee is a person who is unwilling to return to his native country because he has suffered past persecution or has a well-founded fear of future persecution "on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The Attorney General must withhold deportation if the alien demonstrates a "clear probability of persecution." INS v. Stevic, 467 U.S. 407, 413, 104 S.Ct. 2489, 2492, 81 L.Ed.2d 321 (1984). This standard requires the applicant "to establish by objective evidence that it is more likely than not that he or she will be subject to persecution upon deportation." INS v. Cardoza-Fonseca, 480 U.S. 421, 430, 107 S.Ct. 1207, 1212, 94 L.Ed.2d 434 (1987). An applicant for asylum and withholding of deportation may prove his persecution claim with his own testimony if it is credible. Aguilera-Cota v. INS, 914 F.2d 1375, 1379 (9th Cir.1990).
 
 III
 
 9
 The BIA determined that Mosa failed to establish his persecution claim because "the applicant's asylum and withholding requests were not supported by credible testimony." We review credibility findings for substantial evidence. Turcios, 821 F.2d at 1399. Adverse credibility findings are afforded substantial deference so long as the findings are supported by "specific, cogent reason[s]." Id. (citations omitted). When specific reasons are given for questioning an alien's credibility, we "evaluate those reasons to determine whether they are valid grounds upon which to base a finding that the applicant is not credible." Vilorio-Lopez v. INS, 852 F.2d 1137, 1142 (9th Cir.1988). The "reasons must be substantial and must bear a legitimate nexus to the finding." Aguilera-Cota, 914 F.2d at 1381.
 
 
 10
 In reaching its adverse credibility decision, the BIA relied on the following three findings of the IJ: (1) Mosa's testimony that there were spies at his technical school was "clearly not true" because if such spies had actually observed his assisting the mujahidin, he would have been executed, not detained; (2) Mosa's testimony that he had received only one week of training before being required to parachute into mujahidin territory was unbelievable because governments do not give soldiers such limited training unless they "are so desperate that they really don't care what kind of people they use[, and] I just don't believe [the Afghan authorities were] that desperate"; and (3) there was a discrepancy between Mosa's oral testimony and his written request for asylum. The BIA stated that "[i]n particular, we find the applicant's claim that he was arrested as a suspected rebel, given [one] week of training as a paratrooper, and then provided with arms and ordered to parachute into mujahidin territory to be inherently unbelievable."
 
 
 11
 * The first two grounds for finding Mosa's testimony incredible are not supported by any evidence, and the reasons given by the IJ and the BIA for their disbelief of Mosa's testimony are not cogent.
 
 
 12
 The IJ had no basis for his conclusion that Mosa would have been executed instead of being detained if there were spies at Mosa's school. It is just as believable that Mosa would not have been executed given his testimony that although he was arrested for suspicion of aiding the mujahidin, he never admitted doing so despite being tortured and interrogated. Furthermore, there is no evidence in the record that KHAD agents summarily executed, without interrogation, all suspected mujahidin sympathizers. Finally, Mosa did not testify that he had personal knowledge that spies at the school had reported him, only that he supposed that to be so. The IJ's suppositions about whether spies really did turn him in would therefore not establish Mosa to be a liar.
 
 
 13
 There is also no support for the IJ's and BIA's conclusion that it is "inherently unbelievable" that Mosa, as a suspected mujahidin sympathizer, would have been given only one week of training before being made to parachute into mujahidin territory. Because Mosa stated that he never admitted aiding the mujahidin while he was detained and tortured for months, it is inherently believable that the KHAD may have concluded he was not a threat. Furthermore, it is not unbelievable that the Afghan army would make a person trained only one week parachute into rebel territory. Although the IJ stated that he did not think that the Afghan army was that desperate, he had absolutely no support for this belief. On the contrary, the IJ stated that he reviewed the State Department's Country Reports on Human Rights Practices for 1989, which supports the opposite conclusion. The report states that disappearances were common in areas under the Afghan regime's control "frequently [as a] result of the impressment into military service of males as young as 13 years old." 101st Cong., 2d Sess. 1321 (Comm. Print 1990). The report continues that the "regime's military and secret police continue to impress large numbers of underage boys into the military, taking them from the street and sometimes from classrooms and homes." Id. at 1322.
 
 
 14
 Mosa's testimony regarding the spies at his school and his impressment into military service was found "incredible simply because [the IJ and BIA did] not wish to believe him." Ramos-Vasquez v. INS, 57 F.3d 857, 861 (9th Cir.1995). This unsupported disbelief was an inadequate basis for an adverse credibility finding because the finding was not "based on substantial evidence of record." Id.
 
 B
 
 15
 The third ground for the adverse credibility finding is likewise inadequate. The IJ concluded that there was a discrepancy between Mosa's oral testimony and his written request for asylum with regard to his military service. Specifically, the IJ stated that although Mosa's asylum application stated "that he often pled with his captors not to serve and was beaten ... when I specifically asked him here today he said no he had never resisted the service."
 
 
 16
 The discrepancy the IJ identifies is no discrepancy at all. The record reflects that Mosa's testimony was as follows:
 
 JUDGE TO MR. MOSA
 
 17
 Q. Did you refuse the military service, sir?
 
 
 18
 A. I told them that I have to continue my school but they said no you have to serve the army because army is more important than school. And they said whenever you finish the army service you can--we will give you graduation award immediately.
 
 
 19
 Q. Did you--did there ever come a time when you just plainly refused to do anything for the army?
 
 
 20
 A. I'm sorry I can't understand.
 
 
 21
 Q. Did there ever come a time when you just refused to do anything for the army?
 
 
 22
 A. If I was--if I say that probably they would put me back in prison and could probably execute me.
 
 
 23
 Q. Did you ever say that you would not cooperate?
 
 
 24
 A. No, I was afraid to say that.
 
 
 25
 Mosa testified that he did not refuse military service, but he did not testify that he never pleaded "not to serve...." The dissenting BIA panel member correctly concluded that "[p]leading to be released from service is not the same as refusing to serve or to cooperate, and there was no questioning of the respondent regarding this difference." There was not a discrepancy between Mosa's asylum application and his testimony.
 
 IV
 
 26
 "In the absence of substantial evidence supporting a finding of adverse credibility, the BIA is required explicitly to consider a petitioner's claims for asylum and withholding of deportation." Ramos-Vasquez, 57 F.3d at 862. We reverse and remand to the district court with instructions to remand to the BIA, with leave to further remand to the IJ, for a determination of Mosa's claims for asylum and withholding of deportation without reliance on the adverse credibility finding.
 
 
 27
 REVERSED and REMANDED.
 
 
 
 [1]
 One member of the BIA panel dissented because he was neither convinced that Mosa's testimony was incredible nor that the IJ based his decision on a "clear" adverse credibility determination