**Mohamed Salaad MOHAMUD, Petitioner,**

v.

**IMMIGRATION NATURALIZATION AND SERVICES, Respondent.**

No. 01–71222.

INS No. A75–674–613.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 5, 2002.

Decided Aug. 26, 2002.

Before NOONAN, HAWKINS and GOULD, Circuit Judges.

### MEMORANDUM *

Petitioner Mohamud contests the Board of Immigration Appeals' (BIA) denial of his applications for asylum, withholding of removal, and voluntary departure. The BIA's denial rested on its determination that Mohamud lacked credibility. For the reasons we set out below, we remand Mohamud's petition to the BIA for greater factfinding.

Credibility findings of an IJ and the BIA are reviewed under a "substantial evidence" standard. *See Ramos–Vasquez v. INS*, 57 F.3d 857, 861 (9th Cir.1995). This court must uphold the BIA's findings unless the evidence presented would compel a reasonable finder of fact to reach a con-

trary result, *see de Leon–Barrios v. INS*, 116 F.3d 391, 393 (9th Cir.1997); however, minor inconsistencies in the record are not an adequate basis for an adverse credibility finding, *see Mejia–Paiz v. INS*, 111 F.3d 720, 726 (9th Cir.1997).

Mohamud claims he is entitled to asylum because he was persecuted or because he has a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1101(a)(42). Specifically he alleges that he is a member of a minority clan (the Tunni), and that in 1991, a group of armed militia from the Hawiye clan, a rival and dominant tribe, came to his home in Somalia and beat and tortured him and members of his family as a result of their minority ethnicity. This testimony is the heart of his asylum claim. Mohamud's testimony on this essential issue was bolstered by a polygraph test, an independent expert witness who was able to verify Mohamud's claim, and another witness, Dahir.

Nonetheless, the BIA supported the adverse credibility determination of the IJ, relying principally on the discrepancies between the interview notes of an asylum officer (AO) and the other evidence presented during the hearings. The BIA, we conclude, was mistaken in relying on the AO notes for any discrepancies affecting the heart of the matter. It is additionally significant that the AO's notes read as follows:

Q. In your I 589 statement it says you were tortured and lost consciousness? -

A. It never happened in Marca, it happened in Kismayo.

Obviously, there is no correspondence between the AO's question and Mohamud's

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

reported reply. The mismatch between question and answer compels the conclusion that the notes at this point are garbled and are therefore untrustworthy. As the AO had no memory of the conversation and as the notes here cannot be trusted, there is no evidence supporting the Board's finding of discrepancy.

At the IJ hearing, the AO was permitted to testify from his notes of his interview. The testimony came not from actual memory, but from the AO's notes, which, unlike a deposition, were not a verbatim transcript and not reviewed by the interviewee. We have seen the notes and reviewed them carefully and find that they are not sufficiently detailed or transcribed to serve as a reliable basis for an adverse credibility finding. We make this conclusion in large part because the principal discrepancy noted by the BIA focused on whether the alleged attack occurred in Marca or Kismayo, both towns in Somalia. Mohamud's friend and witness, Dahir, testified that the attackers were Kismayo, presumably meaning "from Kismayo," but that they attacked Mohamud's home, which was in Marca, where both Dahir and Mohamud had lived.

That there is dispute over whether the harm happened in Kismayo or Marca is ultimately less relevant than the petitioner's undisputed testimony that harm did occur. A recent decision of this Court held that "[a] minor inconsistency in identifying the location of a person's persecution, in light of otherwise consistent testimony, cannot form the basis of an adverse credibility finding. This is especially true given that '[w]e have long recognized that asylum hearings frequently generate mistranslations and miscommunications.'

*Maini v. INS*, 212 F.3d 1167, 1176 (9th Cir.2000)." *Bandari v. INS*, 227 F.3d 1160, 1166 (9th Cir.2000).

While it is true that the BIA found other discrepancies in Mohamud's application, none of them went to the heart of the matter. An adverse credibility determination can only be sustained if the omissions or inconsistencies go to the heart of an applicant's asylum claim. *Akinmade v. INS*, 196 F.3d 951, 954 (9th Cir.1999). The heart of the matter was addressed in consonance by Dahir, Samad (the expert witness), the polygraph and the testimony of Mohamud. There was no cogent reason offered to explain why for instance Mohamud might lie about whether the attack occurred in one Somali town over another or what the importance of such a discrepancy is.

Consequently, we remand to the BIA the task of determining whether, absent the AO's notes and testimony based thereon, Mohamud's statements about his persecution are credible.[1]

**REMANDED.**

---

1. Should Mohamud's testimony about the heart of the matter be found credible, the BIA must then make a finding on whether the presumption of well-founded fear has been rebutted by a showing of changed country conditions. Until the record is further developed for review, we prescind from addressing that issue.