**Luis Manuel CITE–RODRIGUEZ,
Petitioner,**

v.

**Alberto R. GONZALES,\* Attorney
General, Respondent.**

Nos. 02–71766, A70–804–249.
Agency No. A70–804–249.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 15, 2003.

Submission withdrawn May 19, 2003.

Re–Submitted March 18, 2004.

Decided March 18, 2005.

---

\* Alberto Gonzales is substituted for his predecessor, John Ashcroft, as Attorney General of the United States, pursuant to Fed. R.App. P. 43(c)(2).

ath, Office of Immigration Litigation Ben Franklin Station–Civil Division, Washington, DC, for Respondent.

Before TASHIMA, BERZON, and CLIFTON, Circuit Judges.

CLIFTON, Circuit Judge, dissenting.

## MEMORANDUM **

Luis Manuel Cite Rodriguez ("Cite") petitions for review of a summary affirmance by the Board of Immigration Appeals (BIA) denying his petition for asylum. Because substantial evidence does not support the finding of the Immigration Judge (IJ) that Cite did not have a well-founded fear of persecution, and the IJ failed to analyze the reasonableness of internal relocation, we grant the petition and remand.

John Ayala, Cobos & Ayala, Los Angeles, CA, for Petitioner.

Regional Counsel, Western Region Immigration & Naturalization Service, Laguna Niguel, CA, Ronald E. LeFevre, Chief Legal Officer, Office of the District Counsel Department of Homeland Security, San Francisco, CA, Arthur L. Rabin, Esq., James R. Grimes, Esq., Audrey B. Hemes-

## I. STANDARD OF REVIEW

The BIA affirmed without opinion, so we look to the decision of the IJ as the Attorney General's final decision. *Falcon Carriche v. Ashcroft*, 350 F.3d 845, 849 (9th Cir.2003).[1] We review the IJ's factual findings for substantial evidence, but questions of law regarding Cite's statutory eligibility for relief de novo. *Baballah v.*

---

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. Cite's contention that the BIA's affirmance without opinion violated his due process rights has been rejected by this court. *See Falcon–Carriche v. Ashcroft*, 350 F.3d 845, 849–52 (9th Cir.2003). This court has determined that, on some occasions, we may, as Cite contends, review the BIA's decision to affirm without opinion. *See Chen v. Ashcroft*, 378 F.3d 1081, 1087–88 (9th Cir.2004). We have also held that there are circumstances in which we cannot proceed with judicial review

unless the BIA reveals the basis for its affirmance. *See Lanza v. Ashcroft*, 389 F.3d 917 (9th Cir.2004).

We do not, however, have any occasion to exercise our power separately to review the BIA's decision to affirm without opinion in this case, as we are granting the petition on the merits and remanding. *See Falcon–Carriche*, 350 F.3d at 855 (noting that when this court reviews the merits of a case, it can "be unnecessary and duplicative" to review the decision to affirm without opinion). Nor do we need any further explanation from the BIA, as all aspects of the IJ's decision are subject to judicial review.

*Ashcroft,* 367 F.3d 1067, 1073 (9th Cir. 2004).

## II. DISCUSSION

### A. Credibility

■ We must first ascertain if the IJ made a credibility finding regarding Cite. If not, we must take Cite's testimony to be true. *See Lopez–Alvarado v. Ashcroft,* 381 F.3d 847, 851 (9th Cir.2004).

We cannot infer from an ambiguous opinion that an IJ made an adverse credibility determination. *Hartooni v. INS,* 21 F.3d 336, 342–44 (9th Cir.1994). "Absent an explicit finding that a specific statement by the petitioner is not credible we are required to accept her testimony as true." *Id.* at 342.

The IJ commented that "[t]here are serious credibility problems in this case," but never expressly stated whether he resolved those "problems" in favor of believing or disbelieving Cite. Instead, the IJ interspersed his discussion of credibility with a discussion of the merits of Cite's asylum application, including: whether the reason Cite was recruited was because of his religious beliefs; whether Cite could relocate to Guatemala City; and whether disbanding the civil patrols constituted changed country conditions, making it "highly unlikely that if he went back to Guatemala ... he would be harmed." Also, when discussing credibility, the IJ noted both sides of the issue. For instance, the IJ properly noted Cite's inconsistent initial application as grounds for suspicion, but also recognized that immigration notaries often file fabricated asylum applications without an applicant's awareness. Finally, when the IJ concluded that "[t]here is insufficient evidence ... to show that there would be a basis for any harm to him," he noted that "if the civil patrol had still existed or the army had

inducted him and he escaped, that would be a different situation based on his fear of returning because of passivism [sic]." The latter observation only makes sense on the premise that Cite's story was truthful but his fear of persecution not well-founded.

Thus, it appears that the IJ ultimately took Cite's second story as basically truthful—or, at least, did not unambiguously determine otherwise. We therefore conclude that the IJ did not make an adverse credibility determination, and take Cite's testimony to be true.

### B. Eligibility for Asylum

#### 1. Past Persecution

■ Cite argued that the PACs specifically sought to enlist him because of his religious beliefs and his identity as a socially active Catholic. The IJ concluded that "[t]here is nothing in this record to show that the reasons why the PACs" tried to recruit him included such a motivation. Substantial evidence—or, rather, the lack of evidence supporting Cite's claim—supports this conclusion.

Cite needed to prove that his religion or social group was at least one factor in the PACs decision to target him for recruitment. *See Del Carmen Molina v. INS,* 170 F.3d 1247, 1250 (9th Cir.1999) (holding that death threats motivated by both a desire to recruit an individual and her political opinion would qualify as persecution based on one of the five statutory bases); *Melkonian v. Ashcroft,* 320 F.3d 1061, 1068 (9th Cir.2003) (reversing IJ's denial of asylum application based on forced military recruitment in the face of evidence indicating an applicant had been singled out on account of his ethnicity and religion).

Cite, however, failed to prove such a motivating factor. He testified only to his *belief* that he was targeted because of his

identity and community activity as a Catholic. Documentary evidence recounts widespread allegations that socially active Catholics were mistreated by government-allied forces during the civil war. Cite did not adduce evidence, however, that showed that government-allied forces used targeted forced recruitment as one tool to mistreat socially active Catholics, or that the PAC members who tried to recruit him were motivated by his group identity. The more general evidence regarding mistreatment of socially active Catholics cannot fill that gap.[2]

### 2. Well–Founded Fear of Persecution

"[C]onscientious objection to military service" is "grounds for relief from deportation where the alien would be required to engage in inhuman conduct were he to continue serving in the military." *Ramos–Vasquez v. INS*, 57 F.3d 857, 863 (9th Cir.1995). "Punishment based on" that objection constitutes persecution based on imputed political beliefs. *Id.* at 863–64 (quoting *Barraza Rivera v. INS*, 913 F.2d 1443, 1453 (9th Cir.1990)).

Cite presented evidence to establish that, informed by his Catholic faith and pacifist beliefs, he conscientiously objected to Civil Defense Patrol (Patrulla de Autodefensa Civil, or "PAC") recruitment because he would have been "required to engage in inhuman conduct." *Id.* Cite feared that, like his uncle who had been conscripted by the PACs and then forced to serve in the army, he would be forced to commit murder and other human rights abuses. Cite's uncle was abducted by the PACs in 1985 and forced to join the army, which ordered him to kill unarmed peasants and summarily execute disobedient conscripts. Grown suicidal after having been made into a "killing machine," the uncle deserted and made his way to the United States. The uncle stressed to Cite that "he was obligated to kill or be killed ... He had seen many young men murdered by the civil defense patrol and soldiers for their refusal to follow orders to kill innocent people." Cite testified that he was scared to return to Guatemala because "above all, I was thinking of a problem that my uncle had."

Cite further testified to his fear that, upon return to Guatemala, he would be subject to reprisal attacks by former members of the PACs as punishment for his failure to join them.[3] The IJ, however, found that the PACs had been disbanded since the 1996 peace accords, so "it is highly unlikely that if he went back to Guatemala ... he would be harmed." It appears, therefore, that the IJ determined that Cite did not meet his burden of proving "a reasonable possibility of suffering" persecution upon returning to Guatemala, 8 C.F.R. § 1208.12(2)(i)(B), and so did not establish an objectively well-founded fear of persecution. A "reasonable possibility" of future persecution may be no more than a one in ten chance. *See INS v. Cardoza–Fonseca*, 480 U.S. 421, 430, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987). The IJ's decision in this regard is not supported by substantial evidence.

According to State Department Country Reports, an armistice was declared in 1996, and the PACs were officially disbanded and disarmed. Cite, however, pointed to State Department and human-

---

2. We are assuming for purposes of this analysis, without so deciding, that Cite was a "socially active Catholic," and that discrimination against socially active Catholics is discrimination against "a particular social group." 8 U.S.C. § 1101(a)(42).

3. This testimony satisfied Cite's burden to establish a subjective fear element of future persecution. *See* § 1208.13(b)(2)(i)(A).

rights groups reports indicating that former human rights abusers, including members of the PACs and the military commissioners who served as liaisons between the PACs and the army, had been allowed to join the new national police force. Further, as recently as 1996, some former PAC members had executed refugees returning to Guatemala, and Amnesty International reported in 1997 that hundreds of extrajudicial executions had occurred in the previous three years. Cite testified that, as a known pacifist Catholic in a small town who fled PAC conscription, he would be an easy target for reprisals by former PAC members there.

Cite's evidence is enough to satisfy his burden to show a reasonable possibility of future persecution in the form of punishment for his avoidance of PAC service and the human rights violations that would have entailed.[4] Substantial evidence does not support the IJ's opinion to the contrary. Accordingly, Cite has established a well-founded fear of persecution based on imputed political beliefs.

### 3. Relocation

█ "An applicant does not have a well-founded fear of persecution if the applicant could avoid persecution by relocating to another part of the applicant's country of nationality, ... if under all the circumstances it would be reasonable to expect [him] to do so." The IJ concluded that Cite "could relocate to Guatemala City or other parts of the country." § 1208.13(b)(2)(ii). This holding was supported by substantial evidence; the

changes in Guatemala since the 1996 peace accords, coupled with the lack of any evidence suggesting former PAC members in Guatemala City would recognize Cite, strongly suggests that Cite could avoid persecution by relocating.

The IJ's holding, however, was not sufficient to deny asylum under the regulation. "It is not enough ... for the IJ to find that the applicants could escape persecution by relocating internally. It must be reasonable to expect them to do so." *Melkonian*, 320 F.3d at 1069. When determining the reasonableness of internal relocation, an IJ should consider "economic ... infrastructure, ... [and] social and cultural constraints, such as ... familial ties." § 1208.13(b)(3). The IJ failed to analyze the reasonableness of Cite relocating in Guatemala, an especially glaring omission in light of Cite's testimony that he had no family in Guatemala City and that he worried about finding a job there.

Cite "introduced evidence regarding the reasonableness of relocation, and he is entitled to have that evidence considered under the correct legal standard." *Melkonian*, 320 F.3d at 1071. On remand, the BIA must analyze the reasonableness of relocation under the correct legal standard.[5] The government bears the burden of proof regarding the reasonableness of relocation, because Cite had a well-founded fear of "government or government sponsored" persecution. § 1208.13(b)(3)(ii). The BIA must consider evidence relating to reasonableness factors listed in § 1208.13(b)(3),

---

4. We determine that Cite met this burden based on evidence in the administrative record, which was developed between 1996 and 1998. Only that evidence is relevant to the question of Cite's eligibility for asylum based on a well-founded fear of persecution. *See Avetova–Elisseva v. INS*, 213 F.3d 1192, 1198 n. 9 (9th Cir.2000).

5. This legal standard was codified in regulations enacted after the IJ issued his opinion, but before the BIA affirmed it. *See* 8 C.F.R. § 208.13 (2001). Because that regulation merely codified "the plain import of the law at the time of the applicant's hearing," we apply it on review. *See Melkonian*, 320 F.3d at 1070 & n. 3.

and any other factors relevant to the reasonableness analysis.

## IV. CONCLUSION

We GRANT the petition and REMAND for a determination of the reasonableness of internal relocation.

CLIFTON, Circuit Judge.

Because I disagree with my colleagues' conclusions regarding credibility and fear of future persecution, I respectfully dissent.

No "unique or particular words" are required when an IJ makes an adverse credibility determination. *de Leon–Barrios v. INS,* 116 F.3d 391, 394 (9th Cir.1997). Here, the IJ made a point of explaining in his oral decision that he had an "opportunity to observe [Cite] in Court today, hear his claim, and evaluate all the evidence." Immediately after that comment, the IJ concluded: "There are some serious credibility problems in this case, the first of which is the fact that [Cite] has submitted an entirely false asylum application." A little later, the IJ again observed that there were "serious credibility problems in this case" and followed that statement with three specific and cogent reasons for discrediting Cite's testimony. The IJ denied the asylum application in the very next sentence. It seems clear to me that the IJ made an adverse credibility determination, and it is supported by substantial evidence. We have found similar adverse credibility determinations sufficiently unambiguous to require review under the substantial evidence standard. *See Vera–Villegas v. INS,* 330 F.3d 1222, 1230–31 (9th Cir. 2003); *de Leon–Barrios,* 116 F.3d at 393–4; *Lopez–Reyes v. INS,* 79 F.3d 908, 911–912 (9th Cir.1996).

As for the fear of future persecution, Cite was required to show that "the evidence presented ... was such that a rea-sonable factfinder *would have to conclude* that the requisite fear of persecution existed." *Garrovillas v. INS,* 156 F.3d 1010, 1013 (9th Cir.1997) (quoting *Shirazi–Parsa v. INS,* 14 F.3d 1424, 1427 (9th Cir.1994)) (alteration in original) (emphasis added). Here, the evidence did not *compel* the conclusion that the feared persecution was "on account of" a protected ground, as required by statute, 8 U.S.C. § 1101(a)(42). Even if we assume Cite's testimony to be credible, he has demonstrated only that he holds or may be imputed to hold protectable beliefs, that former PAC members have some presence in Guatemala and that some returning refugees have been murdered. Those murders were not shown to have been connected to the persecution of persons holding political or religious beliefs that are also shared by or imputed to Cite.

The petition for review should be denied.