

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-7-2003

# Matlijoska v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-4193

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation
"Matlijoska v. Atty Gen USA" (2003). *2003 Decisions.* Paper 126.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/126

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Case No:  02-4193
_____

MIRJANA MATLIJOSKA;
NAUME MATLIJOSKI;
GORAN MATLIJOSKI,

Petitioners

v.

JOHN ASHCROFT, ATTORNEY
GENERAL OF THE UNITED STATES

_____

PETITION FOR REVIEW OF THE DECISION
OF THE BOARD OF IMMIGRATION APPEALS
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
on November 4, 2003

Before: McKEE, SMITH, and WEIS, Circuit Judges,
(Filed:  November 7, 2003)

_____

OPINION

_____

SMITH, Circuit Judge

I.

Mirjana Matlijoska and her two sons, Goran and Naume, seek review of the Immigration Judge's ("IJ") denial of their asylum petitions. Ms. Matlijoska is a native of Serbia, and a citizen of Macedonia. Both her sons are citizens of Macedonia. Ms. Matlijoska first entered the country in 1990 following her then husband, who had entered the country the previous year. In 1992 she returned to Macedonia to bring her sons to the United States. Ms. Matlijoska and her sons entered the United States together on September 5, 1992. App. at 267-72. On April 2, 1993, Ms. Matlijoska, her then husband, and their two sons filed petitions for asylum. App. at 57, 211-16, 202-10, 124-42.[1] In March 2000, Ms. Matlijoska and her husband were divorced.[2] It was not until July of 2000 that the Office of Political Asylum interviewed Ms. Matlijoska regarding her petition. On July 21, 2000, the INS issued separate notices to appear, charging petitioners with removability under § 237(a)(1)(B) of the Immigration and Naturalization Act, 8 U.S.C. § 1227(a)(1)(B). Petitioners requested asylum, withholding of removal under the Immigration and Nationality Act ("INA"). and withholding of removal under the

---

[1] The government seems to imply, based on the manner in which it sequences the facts, that the petitioners did not apply for asylum until after they received notices to appear on July 27, 2000. That is not the case. Petitioners applied for asylum within seven months of entering the United States in September 1992, and the INS waited until 2000 to act upon the applications.

[2] Mr. Matlijoska's whereabouts and immigration status are unknown. Neither issue is pertinent to this appeal.

2

Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("Torture Convention").

At the hearing before the IJ, Ms. Matlijoska testified that in 1991 her home in Macedonia was burned down by persons she believed to be Albanians. Her son Naume testified that he had been present along with his mother when the house was burned down. Ms. Matlijoska testified that another reason for her flight was that she was afraid that her sons, who were 17 and 12 at the time of their entry into the United States, would be drafted into the Macedonian army. She explained that she was afraid of returning to Macedonia, because she had nothing there.

In the final hearing, the IJ issued an oral ruling, denying petitioners' applications for asylum. Although the IJ found Ms. Matlijoska's testimony credible, he noted that there was no evidence other than her own testimony that her home in Macedonia was burned down. The IJ determined that none of the reasons provided by petitioners rose to the level required for asylum. Instead, nothing in the country conditions report indicated that Albanians were outside the control of the Macedonian government, nor that they had an effect on civilians. The IJ also found that young men of Naume's and Goran's ages were not likely to be drafted into the Macedonian army, and that even if they had been, Macedonia was at not war, so that it was unlikely that either Naume or Goran would be involved in an armed conflict. Although he acknowledged that it was unfortunate that the law required the Matlijoskas to leave the United States and return to a country where they

3

would be without property, the IJ could see no alternative to removal. The IJ found the Matlijoskas to be people of good character and granted them voluntary departure. The BIA affirmed the IJ without opinion.

## II.

The INA, 8 U.S.C. §§ 208(a) and 241(b)(3) gave the IJ subject matter jurisdiction. The BIA had appellate jurisdiction pursuant to 8 C.F.R. § 3.1(b)(3). This court has jurisdiction over the BIA's decision pursuant to 8 U.S.C. § 1252(a). Where the BIA affirms an IJ's decision without opinion we review the IJ's determination directly. *Abdulai v. Ashcroft*, 239 F.3d 542, 549 n.2 (3d Cir. 2001). An IJ's determination that petitioners did not meet their burden is reviewable on a substantial evidence standard. *Abdille v. Ashcroft*, 242 F.3d 477, 483 (3d Cir. 2001). The IJ's determination is conclusive unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(4)(B). We may reverse the IJ's findings on furture persecution only where "the evidence presented by [petitioner] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). Similarly, with claims of past persecution "we must ascertain whether the [IJ's] factual determinations are supported by substantial evidence . . . " and "we may decline to uphold the [IJ's] findings only if the evidence compels a contrary conclusion." *Ahmed v. Ashcroft*, 341 F.3d 214, 216-17 (3d Cir. 2003)

4

(internal citations omitted).

## III.

Asylum is proper where an alien can show that she qualifies as a refugee who is unable or unwilling to return to her home country because of "persecut[ion] or who has a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). A refugee claiming a well founded fear of persecution must show both that she is subjectively afraid that upon returning to her home country she will be persecuted and that this fear is objectively reasonable. *INS v. Cardoza-Fonseca,* 480 U.S. 421, 430-31 (1987). Where petitioners demonstrate past persecution, they are presumed to have a well-founded fear of persecution. *Abdille*, 242 F.3d at 496; 8 C.F.R. § 208.13(b)(1). When petitioners' application relies on fear of future persecution, he or she must show a well-founded subjective fear, which is "supported by objective evidence that persecution is a reasonable possibility." *Lin v. INS*, 238 F.3d 239, 244 (3d Cir. 2001). If an applicant cannot meet the standard for asylum, it is assumed that the applicant cannot meet the higher standard for withholding removal. *Id*. at 443-44; *Janusiak v. INS*, 947 F.2d 46, 47 (3d Cir. 1991).[3]

---

[3] Withholding removal is appropriate where "the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1253(h)(1). An applicant for withholding of removal under the Torture Convention bears the burden of establishing "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." *Sevoian v. Ashcroft*, 290 F.3d 166, 174-175 (3d Cir. 2002)

The burden is on the petitioner to show that she meets the requirements for asylum. *Li Wu Lin v. INS*, 238 F.3d 239, 244 (3d Cir. 2001). Here, petitioner brings claims of past persecution and future persecution. She must, therefore, establish that the past conduct rises to the level of persecution and that the persecution is likely to continue into the future. *Ahmed v. Ashcroft*, 341 F.3d 214 (3d Cir. 2003); 8 C.F.R. § 208.13.

Ms. Matlijoska provided only two reasons that she fears persecution in Macedonia.[4] First, her home was burned down by individuals she believed to be Albanians. Second, at the time that the Matlijoskas left Macedonia, she was afraid that her sons would be drafted into the military. The IJ found that, even if he were to accept these assertions as true, they do not constitute grounds for asylum.

The dispositive question, then, is whether the IJ was correct that neither of these circumstances rises to the level of "persecution" defined by § 1101(a)(42)(A). Persecution is a "seemingly broader concept than threats to life or freedom." *INS v. Stevic*, 467 U.S. 407, 428 n.22 (1984).[5] It is not, however, a limitless concept, as

---

(quoting 8 C.F.R. § 208.16(c)(2)).

[4] Ms. Matlijoska suggests a third reason–that she is afraid to return to Macedonia because she has nothing left there. Although unfortunate, this is not an appropriate basis for an asylum claim.

[5] Petitioners would have the court root its definition in the *Handbook on Procedures and Criteria for Determining Refugeee Status* (Geneva, 1992). Although the *Handbook* may be useful, petitioners agree that it does not have the force of law in the United States. *INS v. Aguirre-Aguirre*, 526 U.S. 415, 427 (1999). As the Supreme Court explained in *Aguirre*, the purpose of the *Handbook* is to give guidance, not make law. It is unclear from petitioners' brief, however, what the standard would be under the *Handbook*, and whether petitioners would meet that standard. There is no reason, then, for us to address this assertion.

explained by this Court in *Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir. 1993):

> [T]he concept of persecution does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional. If persecution were defined that expansively, a significant percentage of the world's population would qualify for asylum in this country– and it seems most unlikely that Congress intended such a result.

Persecution must be "extreme conduct" in order to qualify for asylum protection. *Id* at 1240 n.10. There is ample case law from which to draw the outer limits.[6]

Before addressing the question of whether the burning of petitioners' house by Albanians rises to the level of persecution, we must address the IJ's statement that "[w]e have no evidence that the house was burnt." What the IJ apparently meant was that petitioners had not offered corroborating evidence on this point. But we have held that it is difficult for those individuals who flee persecution to provide the requisite corroboration necessary to prove persecution. *Senathirajah v. INS*, 157 F.3d 210, 215-16 (3d Cir. 1998). As explained in *Senathirajah*,

> Common sense establishes that it is escape and flight, not litigation and

---

[6] *Compare Ahmed,* 341 F.3d at 214 (discrimination against stateless Palestinians in Saudi Arabia does not constitute persecution), *Skalak v. INS*, 944 F.2d 364, 365 (7th Cir 1991) (two incidents where petitioner was jailed for questioning for three days after political activity insufficient to show persecution), *Kubon v. INS*, 913 F.2d 386, 388 (7th Cir. 1990) (no persecution found where petitioner was detained for five days for transporting literature for a revolutionary organization), and *Zalega v. INS*, 916 F.2d 1257 (7th Cir 1990) (petitioner was not persecuted when repeatedly arrested, interrogated, fired from employment, and parents questioned when he left for the United States), *with Zubeda v. Ashcroft*, 333 F.3d 463, 472 (3d Cir. 2003) (repeated sexual abuse, including gang rape along with brutal murder of family members sufficient to show persecution), and *Lin*, 238 F.3d at 244 (repeated attempts by Chinese government to arrest petitioner for student demonstrations after 700 students were killed at Tiananmen Square constituted reasonable fear of persecution).

7

corroboration, that is foremost in the mind of an alien who comes to these shores fleeing detention, torture and persecution. Accordingly, corroboration is not required to establish credibility. The law allows one seeking refugee status to "prove his persecution claim with his own testimony if it is credible."

*Id.* (quoting *Mosa v. Rogers*, 89 F.3d 601, 604 (9th Cir. 1996)). Thus, an individual wishing to establish past persecution may do so simply through her own testimony, where the IJ finds the individual credible. The IJ's decision states that he found Ms. Matlijoska and Naume credible. It was improper, therefore, for the IJ to require corroboration that the petitioners' house was burned down.

However, the IJ's determination that there was no evidence to support the petitioners' claim that Albanians burned the house is supported by the record. Ms. Matlijoska did not explain why she believed that it was Albanians who had burned down her home. Naume testified that he did not know that the house was on fire until a neighbor came over and informed them. Thus, the petitioners themselves did not provide the IJ with sufficient evidence that Albanians, as opposed to some other group or individual, were responsible for burning Petitioners' house. Furthermore, the country conditions report available to the court indicates through numerous examples where ethnic Albanians, not Macedonians, have been victims of abuse. The IJ, then, had ample reason to reject petitioners' suggestion that Albanians had burned down their home.

The IJ concluded that, even if he were to accept Ms. Matlijoska's testimony that Albanians burned down her home, this does not constitute persecution. We agree. Where

8

persecution is alleged to have occurred at the hands of a group that is not part of the government, that group must be shown to be beyond the control of the government. *See Abdille v. Ashcroft,* 242 F.3d 477, 494 (3d Cir. 1991); *Elnager v. INS*, 930 F.2d 784, 787 (9th Cir. 1991). There was no such evidence presented to the IJ. Nothing in Ms. Matlijoska's testimony, nor in Naume's testimony, supports a finding that ethnic Albanian factions were beyond the control of the Macedonian government. The IJ was correct, then, that even a finding that the petitioners' home was burned by ethnic Albanians would not rise to the level of persecution.[7]

Ms. Matlijoska also seeks asylum because at the time of her flight, she was concerned that her sons would be drafted into the Macedonian Army. She gave no explanation as to why she feared their service in the Macedonian Army. Compulsory military service by itself falls short of persecution. *Elias-Zacarias*, 502 U.S. at 482; *Kaveh-Haghigy v. INS*, 783 F.2d 1321, 1323 (9th Cir. 1986). Because petitioners failed to provide any evidence, testimonial or otherwise, as to why it was appropriate to believe that Naume and Goran, then 17 and 12 years old, would be drafted into the military, or that their conscription would lead to anything other than routine military service, they failed to meet their burden to show persecution.

Additionally, petitioners argue that, even though they did not supply it, the IJ

---

[7] Petitioner's argument that they are part of a "social group" as defined by the United Nations, and thus subject to persecution by ethnic Albanians is unpersuasive. Nothing in the record supports the assertion that ethnic Albanians targeted petitioners because they were Macedonian.

should have obtained the country report on Macedonia. The country conditions report for Macedonia, released by the State Department in February 2001, was available to the IJ prior to Ms. Matlijoska's testimony and marked as exhibit number 7. App. at 84, 157-66.

Petitioners also assert that the IJ chastised them for omitting the country report. Appellant's Br. at 13. The IJ commented in his oral ruling that, "The respondent has shown no country conditions in the year 1992, which would have indicated that either of her sons would have been taken into the army at that time . . . ." App. at 62. The IJ was not intimating, however, that petitioners had not provided any country conditions, but rather that those country conditions provided did not support petitioners' fears. A review of that report indicates that he could have made an even stronger statement, that the country report actually paints a picture of Albanians as suffering persecution at the hands of Macedonians, not the other way around.

The IJ's determination that no past persecution had occurred, nor that petitioners have a well-founded fear of future persecution, is supported by the record viewed as a whole. We therefore affirm the BIA's affirmance of the IJ's decision.

TO THE CLERK:

Please file the foregoing Opinion.

_____/s/ D. Brooks Smith_____
Circuit Judge

10