**Ilyas AHMAD, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 98–1058.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 29, 1998.

Decided Jan. 4, 1999.

Mark J. Thomas (argued), Chicago, IL, for Petitioner.

Samuel Der–Yeghiayan, Immigration & Naturalization Service, Chicago, IL, Loreto S. Geisse (argued), Department of Justice, Civil Division, Immigration Litigation, Washington, DC, for Respondent.

Before POSNER, Chief Judge, BAUER, and WOOD, JR., Circuit Judges.

BAUER, Circuit Judge.

Appellant, Ilyas Ahmad, a native and citizen of Pakistan, is now appealing the Board of Immigration Appeals' decision to deny his application for asylum and withholding of deportation under §§ 208 and 243(h) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158 and 1253(h). He claims that, as a member of the Ahmadi religion, he has a well-founded fear of religious persecution should he return to Pakistan. We have jurisdiction to review this claim pursuant to § 106 of the Immigration and Nationality Act, 8 U.S.C. § 1105a. After a full review, we affirm the Board's decision to deny his application, finding that the decision was supported by substantial evidence.

## I. BACKGROUND

Ilyas Ahmad ("Ahmad") claims that he is a member of the Ahmadiyya Movement, one of approximately seventy-three sects of Islam. Members of the Ahmadiyya Movement consider themselves Muslims, but their particular sect differs from traditional Muslim sects in that the Ahmadis believe that their founder, like Mohammed, was also a prophet. Because of this differing belief, the government of Pakistan has amended its constitution to declare that Ahmadis are not truly Muslims.

In 1984, Pakistan's government enacted Ordinance XX, which criminalizes certain Ahmadi activity that equates their religion with the Muslim religion. The result of these governmental actions has been some discrimination in the workplace and at schools, and the prosecution of several Ahmadis under Ordinance XX, which has been held constitutional by Pakistan's supreme court. Because of the government's enaction of legislation against Ahmadis in Pakistan, many Ahmadis are now seeking asylum in various foreign countries, including the United States. The United States Department of State has warned that some Pakistanis seeking asylum in this country have falsely claimed to be members of the Ahmadiyya Movement; thus, applicants seeking asylum should have the proper documentation attesting to their membership in the Ahmadiyya Movement.

Ahmad entered the United States illegally on November 3, 1992 in New York City. Upon entrance to this country, he was detained by the Immigration and Naturalization Service ("INS") and given a deferred inspection to February 23, 1993 in New York City. Venue was subsequently changed to Chicago, and Ahmad, who admits excludability, filed his application for asylum and withholding of deportation here in the Windy City. An evidentiary hearing was held before an Immigration Judge ("IJ") on August 3, 1995. At the hearing, Ahmad testified that he has been an Ahmadi since birth and that he fled Pakistan because he could not openly practice his religion there. He also said that he fears that his life would be in danger should he return to Pakistan. He described an incident that prompted his departure from Pakistan where he was kidnaped by Sunnite Muslim Fundamentalists and taken to their mosque. Ahmad testified that he was tied to a pillar and repeatedly told to change his religion. He further asserted that the Muslims left him tied to the pillar all night. According to his testimony, this was the only encounter that Ahmad had with the Muslim Fundamentalists. Shortly thereafter, Ahmad obtained a fake passport and left Pakistan. He testified that his parents helped him pay for his passport and his airplane ticket from Karachi to London, and, eventu-

ally to New York City. Ahmad also testified about acts of violence directed towards other Ahmadis in his village for simply practicing their religion. Finally, Ahmad testified that his brothers had fled from Pakistan to seek asylum in Paris, although it is unclear from his testimony whether they have been granted asylum or not.

In addition to his testimony, Ahmad provided the IJ with extensive documentation concerning the treatment of Ahmadis in Pakistan. He provided a copy of Ordinance XX, the supreme court of Pakistan's decision upholding the constitutionality of Ordinance XX, and various other documents from human rights organizations regarding the discrimination of Ahmadis in Pakistan. Ahmad also provided a copy of a letter from Mukhtar Cheema ("Cheema"), missionary of the mosque in the northeast region of the United States, to verify his membership in the Ahmadiyya Movement. Finally, although not officially part of the record, Ahmad presented a Pakistani passport stating that he was an Ahmadi.

Based on all of the evidence in the record and Ahmad's testimony at the immigration hearing, the IJ denied Ahmad's claim stating that he did not show that he had a well-founded fear of persecution if he returned to Pakistan. The IJ found that Ahmad's claim was not credible and ordered him deported and excluded from the United States. The IJ based his finding on: 1) inconsistencies between Ahmad's testimony at his immigration hearing and his written application for asylum and withholding of deportation; 2) the fact that his letter verifying his membership in the Ahmadiyya Movement was not provided by the proper authority, nor did it describe the bases for making the determination that Ahmad was a member of the Ahmadiyya Movement; and 3) the fact that he did not believe Ahmad's testimony regarding how he procured the funds for his trip to the United States. Ahmad then filed an appeal to the Board of Immigration Appeals (the "Board"), who affirmed the IJ's decision to deny his application. The Board cited the reasons for the IJ's adverse credibility determination and deferred to his judgment. While the Board recognized the "mistreat-

ment endured by many Ahmadis in Pakistan," it found that Ahmad had not sustained his burden of proving that he had a well-founded fear of persecution, nor did he try to explain any of the evidentiary deficiencies described by the IJ. Ahmad filed this appeal of the Board's decision.

## II. DISCUSSION

■ The Immigration and Nationality Act provides two procedural methods for deportable aliens to remain in the United States if they fear persecution in their native country. First, the alien can apply for asylum if he qualifies for refugee status as defined by 8 U.S.C. § 1101(a)(42)(A). An alien qualifies for refugee status if he is "unable or unwilling to return to, and is unable or unwilling to avail himself ... of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* If the alien qualifies for refugee status, then the Attorney General, in her discretion, may grant asylum to that alien. *Sanon v. INS*, 52 F.3d 648, 650–51 (7th Cir.1995) (citing 8 U.S.C. § 1158(a)). Second, the alien can apply for withholding of deportation. The Attorney General shall withhold deportation of an alien to his native country if he "would be subject to persecution on account of race, religion, or political opinion" in that country. 8 U.S.C. § 1253(h).

■ An applicant's burden of proof is different for an application for asylum than it is for a withholding of deportation. Where an alien applying for a withholding of deportation must show that "it is more likely than not that [he] would be subject to persecution on one of the specified grounds" should he return to his native country, *INS v. Stevic*, 467 U.S. 407, 429–30, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984), an alien applying for asylum "need not prove that it is more likely than not that he ... will be persecuted in his ... home country," but only that he has a well-founded fear of persecution should he return to his home country, *INS v. Cardoza–Fonseca*, 480 U.S. 421, 449, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987). While the Supreme Court has refused to define exactly what a

well-founded fear of persecution is, it is clear that the burden for proving it is not as stringent as it is to show that an alien qualifies for withholding of deportation. *Ramos–Vasquez v. INS*, 57 F.3d 857, 862 (9th Cir. 1995). An alien need only prove a "reasonable possibility" of persecution to qualify for refugee status, not that persecution is more likely than not. *Cardoza–Fonseca*, 480 U.S. at 440, 107 S.Ct. 1207. To prove this, the applicant must demonstrate both a subjective, as well as an objective fear of persecution should he return to his home country. *Berroteran–Melendez v. INS*, 955 F.2d 1251, 1256 (9th Cir.1992). Thus, not only must an applicant have a genuine fear of persecution, but this fear must also be reasonable. The subjective prong can be satisfied by the applicant's "candid, credible, and sincere testimony," and the objective prong can be proven by "credible, direct and specific evidence in the record, of facts that would support a reasonable fear that the petitioner faces persecution." *Id.* (internal citations omitted).

■■■■ An applicant bears a heavy burden on appeal after the Board has denied his application for asylum and withholding of deportation. Ordinarily, the Board's determination of refugee status is reviewed under the "substantial evidence" test. *Angoucheva v. INS*, 106 F.3d 781, 788 (7th Cir.1997). Ahmad, on the other hand, asks that we review his case *de novo* because he claims that the IJ and the Board applied an incorrect legal standard when determining that he did not have a well-founded fear of persecution should he return to Pakistan. However, the IJ's decision was based primarily on an adverse credibility determination, which is a question of fact. Therefore, we will not deviate from the norm, and we will review the Board's decision for substantial evidence. Under that standard, we will uphold the Board's decision if it is supported by reasonable, substantial and probative evidence when looking at the administrative record as a whole. *Sanon*, 52 F.3d at 650. Reversal of the Board's decision is warranted only if the evidence is "so compelling that no reasonable

factfinder could fail to find the requisite fear of persecution." *Angoucheva*, 106 F.3d at 788 (quoting *INS v. Elias–Zacarias*, 502 U.S. 478, 483–84, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992)).

■■■■ Credibility determinations are accorded substantial deference, but they must be supported by "specific, cogent reasons." *Nasseri v. Moschorak*, 34 F.3d 723, 726 (9th Cir.1994), *overruled on other grounds by Fisher v. I.N.S.*, 79 F.3d 955 (9th Cir.1996). In addition, these reasons must "bear a legitimate nexus to the finding." *Id.* Credibility determinations in these sorts of proceedings should only be overturned under extraordinary circumstances, *Nasir v. INS*, 122 F.3d 484, 486 (7th Cir.1997), and a reviewing court should not supersede an administrative agency's findings simply because an alternative finding could also be supported by substantial evidence, *Arkansas v. Oklahoma*, 503 U.S. 91, 113, 112 S.Ct. 1046, 117 L.Ed.2d 239 (1992).

■■■■ The IJ based his adverse credibility determination on several factors. First, he pointed out several inconsistencies between Ahmad's testimony at his deportation hearing and his written application for asylum concerning the night he was allegedly abducted by Sunni Muslims. In his written application, Ahmad stated that the Sunnis strangled him with ropes, tortured him, and demanded that he change his religion. However, at his hearing, Ahmad only stated that he was tied to a pole, mentioning nothing about being strangled or tortured. In addition, he also stated in his application that he was harassed on a daily basis by Muslim Fundamentalists, but in his oral testimony, he said that the incident when he was kidnaped was the only encounter he had ever had with the Muslims. Second, the IJ found that Cheema's letter did not state what information, if any, was used in verifying his membership in the Ahmadiyya Movement. The IJ was also very skeptical of the source of the letter, saying that Ahmad should have obtained one from the national headquarters of the Ahmadi movement.[1] Lastly, the IJ

---

1. Ahmad submits that there are nine individuals designated throughout the United States who are authorized to verify membership in the Ahmadiy-

ya Movement, and that Cheema is one of those nine individuals.

was not impressed with Ahmad's account of how he was able to obtain the money to fund his trip from Pakistan to America, calling it contrived and implausible. Thus, the IJ concluded that Ahmad's application only provided a "very vague, sketchy account of what occurred," and his testimony was "not believable ... [or] consistent and wasn't detailed and not sufficient to establish his claim." Oral Decision of the IJ at 6–7.

The Board adopted the IJ's adverse credibility findings and upheld his decision noting that Ahmad made no attempt to explain the inconsistencies pointed out by the IJ. The Board agreed that Ahmad's testimony was neither believable nor consistent. While the Board recognized the mistreatment of Ahmadi citizens in Pakistan, it did not feel that Ahmad met his burden of persuasion in proving a well-founded fear of persecution. We feel that the Board's decision is supported by substantial evidence as provided in the record. Furthermore, because of the fact-sensitive nature of immigration proceedings, and since we do not hold ourselves out as experts in immigration or foreign affairs, we give substantial deference to the Board's decision. *Sanon*, 52 F.3d at 651.

The IJ offered cogent reasons for his adverse credibility determination that had the requisite nexus to Ahmad's claim. The IJ, after watching Ahmad first-hand at the hearing, simply did not believe his testimony, and he offered logical reasons for his credibility determination. We have seen instances where courts have ruled that an IJ's credibility determinations were not supported by substantial evidence. For example, in *Mosa v. Rogers*, 89 F.3d 601 (9th Cir.1996), the Ninth Circuit found that neither the IJ's nor the Board's adverse credibility determination was based on substantial evidence. In that case, the IJ and the Board simply chose not to believe the applicant's testimony without supporting their reasons. *Id.* at 604–05. In addition, they stated that there were discrepancies between his written application and his oral testimony when, indeed, there were none. *Id.* at 605. Additionally, in *Cordero–*

*Trejo v. INS*, 40 F.3d 482 (1st Cir.1994), the IJ based his adverse credibility finding on the fact that the applicant testified that he was attacked by "death squads," when, in his written application, he simply referred to his attackers as "unknown armed men." *Id.* at 488. The First Circuit pointed out that the terms are often used interchangeably, thus this was not enough for an adverse credibility finding. Additionally, the court noted that the IJ's determinations were based on "expectations" that were not supported in the record, and the IJ did not analyze the evidence in light of the general conditions of the applicant's native country. *Id.* at 490–91. Finally, in *Argueta v. INS*, 759 F.2d 1395 (9th Cir.1985), the court determined that certain statements which the IJ found to be inconsistent were, in fact, not inconsistent, and the court remanded the case back to the Board to make it's own credibility determination. *Id.* at 1398, n. 4.

Unlike those situations, however, this is not a case where the IJ's adverse credibility determination was not based on substantial evidence. Here, there were true inconsistencies in Ahmad's stories, and the IJ did not make unsupported, blanket statements that he simply did not believe Ahmad. On the contrary, the IJ did provide ample reasons for his disbelief. Ahmad stated in his application that on the night he was kidnaped, he was also tortured, but when asked directly at his deportation hearing whether he was "beaten or hit in any way," he replied, "[n]o, they did not hit me." A.R. 70. Additionally, Ahmad wrote in his application that he was harassed on a daily basis by Muslim Fundamentalists, but, again, when asked directly about this issue at his hearing, he stated that the kidnaping was the only encounter he ever had with them. Furthermore, after the IJ expressed his doubt about Ahmad's letter from Cheema verifying his membership in the Ahmadiyya Movement, Ahmad made no attempt to further support his claim by obtaining other documentation which the IJ, or the Board upon appeal, would have found more persuasive.[2] This is not a case where there is evidence in the record such that a

---

2. Although this is not ordinary procedure, given the IJ's displeasure with Cheema's letter, Ahmad could have obtained another letter and filed a

motion to submit additional evidence while the case was pending before the Board.

reasonable factfinder could only find in support of Ahmad's application. Because of Ahmad's incredible testimony presented in front of the IJ, he has failed to satisfy the subjective prong of the test for establishing a well-founded fear of persecution.

Ahmad also submits that, as an Ahmadi, we should find that he has a *per se* well-founded fear of persecution should he return to Pakistan. In support of this contention, Ahmad cites to Ordinance XX which criminalizes certain practices of the Ahmadi religion and several human rights articles regarding the treatment of Ahmadis in Pakistan. However, an applicant for asylum must show more than mere membership in a group that, assuming *arguendo*, is subject to some level of persecution. *Ivezaj v. INS*, 84 F.3d 215, 221 (6th Cir.1996). The applicant must also show that he is more likely than other members of the group to be persecuted. *Id.* This, Ahmad simply did not prove. While Ahmad certainly has submitted documentation showing some level of mistreatment of Ahmadis in Pakistan, given the stringent standard of review, we cannot say that he has presented a case that is so compelling that no reasonable factfinder could fail to find a well-founded fear of persecution.

Since we find that Ahmad did not satisfy his burden of proving a well-founded fear of persecution, it necessarily follows that he has also failed to satisfy his burden for the more stringent clear probability of persecution standard to qualify for withholding of deportation.

### III. CONCLUSION

For the foregoing reasons, we find that the Board's decision to deny Ahmad's application for asylum and withholding of deportation was supported by substantial evidence, and we AFFIRM its decision.