**Stefan POP, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 02–1839.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 14, 2002.

Decided Jan. 14, 2003.

**376**

Before RIPPLE, ROVNER, and
DIANE P. WOOD, Circuit Judges.

ORDER

Stefan Pop petitioned for asylum after entering the United States without inspection, because he claimed fear of religious persecution against Jehovah's Witnesses in his native Romania. An Immigration Judge denied Pop's petition for asylum, and the Board of Immigration Appeals ("BIA") later dismissed his appeal. Pop

did not appeal the BIA's decision. Instead, he filed a motion to reconsider, which the BIA denied and he now appeals. The only matter before us is Pop's appeal of the BIA's decision denying his motion to reconsider, and we affirm.

Pop is a 36–year–old Romanian citizen who was apprehended while trying to enter the United States without inspection at Laredo, Texas, in September 1999. After the INS initiated removal proceedings against him, Pop filed an application for asylum and for withholding of removal, under INA §§ 208, 241(b)(3).

Pop testified at a hearing before Immigration Judge James Fujimoto that he feared persecution in Romania due to his family's membership in the Jehovah's Witness and Christian Orthodox churches. Until 1990 Romania was ruled by communist dictator Nicolae Ceaucescu, whose regime was generally considered oppressive toward minority religions. Because of inconsistencies between Pop's application and hearing testimony, his version of the facts is not completely clear. Pop's application for asylum included no complaints of religious persecution specifically directed against him. Pop did allege that during 1987, in response to inquiries from the Romanian secret police ("Securitate") regarding his family members' religion, he stated that he would join the Jehovah's Witness church. Thereafter, the government began surveillance of his activities. Pop also asserts in his application that in 1987 he attempted to flee Romania to join his brother in Austria, but was apprehended by the secret police at the border, interrogated and released.

Pop also asserted that previous incidents of government harassment of his brother and grandparents supported his well-founded fear of future persecution if he were to return to Romania. In his appli-

cation for asylum Pop alleged that during the 1980s, the secret police searched his grandfather's home and beat him because of his role in the church. Pop also claimed that the Securitate harassed and detained his brother on several occasions during the 1980s. Finally, Pop asserts on appeal that his family's religious affiliation would cause him to suffer "substantial economic deprivation" if deported to Romania, because government companies would be unlikely to employ him.

Immigration Judge Fujimoto rejected these contentions, concluding that Pop had not established his own membership in the Jehovah's Witness Church, that he provided no corroborative evidence of government persecution of his relatives, that there were inconsistencies between his application and testimony, and that there was no support for his economic deprivation claim. Pop appealed to the BIA, which affirmed the Immigration Judge's denial of the asylum application on October 23, 2001. Pop chose not to appeal the BIA decision directly to this court, but instead filed with the Board a motion to reconsider its conclusion. The BIA concluded that Pop's motion to reconsider raised no new arguments of fact or law, and that nothing in the record indicated any violation of due process or fundamental fairness. That motion was denied on March 6, 2002, and this appeal followed.

■ Pop appeals the BIA's denial of his motion to reconsider, which we review for abuse of discretion. *Krougliak v. INS,* 289 F.3d 457, 460 (7th Cir.2002). Pop, however, urges us to undertake a full review of the issues raised by the underlying deportation order, citing *Woodby v. INS,* 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966). Pop's reading of *Woodby* is incorrect, however, because the court in that case explicitly did not reach or decide the scope of an appellate court's review of a

motion to reconsider a BIA decision. *See id.* at 286 n. 20. We therefore confine our review only to those arguments raised in the motion to reconsider itself. "Jurisdiction does not attach to other matters relating to the underlying deportation order," which are waived if not presented in the motion to reconsider. *Tittjung v. Reno,* 199 F.3d 393, 397 (7th Cir.1999), *cert. denied,* 530 U.S. 1277, 120 S.Ct. 2746, 147 L.Ed.2d 1009 (2000).

■ In order to demonstrate that the BIA abused its discretion in denying his motion to reconsider, Pop must show that he raised specific errors in the motion that would entitle him to such relief. A motion to reconsider "shall state the reasons for the motion by specifying the errors of fact or law in the prior Board decision and shall be supported by pertinent authority" and the decision to grant or deny a motion to reopen or reconsider is within the discretion of the Board. 8 C.F.R. § 3.2 (2002). Therefore we review the BIA's decision to determine whether it abused its discretion. *Krougliak,* 289 F.3d at 460.

Pop raised only three issues in his motion to reconsider, none of which specified an error in the BIA's original order. First, he contested the Immigration Judge's evaluation of the credibility of his testimony, arguing that "the Immigration Judge could have found him more credible." We review credibility determinations under the substantial evidence test, and is unlikely to overturn them except in the most extraordinary circumstances. *Malek v. INS,* 198 F.3d 1016, 1021 (7th Cir.2000). Even if the Immigration Judge "could have" found Pop's testimony more credible, this court ordinarily will not second-guess an administrative judge's view of the testimony. *Ahmad v. INS,* 163 F.3d 457, 461 (7th Cir.1999).

On appeal, Pop contends that any discrepancies noted by the Immigration

Judge were the result of additional details he introduced in his testimony that had not been included in his application. For example, Pop testified at his hearing that he was once harassed by police in 1996, but did not include such an allegation in his application for asylum. In addition, Pop's application included an assertion that he was beaten on one occasion after returning from Greece, though he never testified to such an incident. To explain these inconsistencies, Pop argues that factual inconsistencies could result from translation problems because "it is uncertain" whether a translator assisted him in the preparation of his statement. But Pop does not support this vague assertion with any evidence. Indeed, Pop's brief does not specifically argue that he was denied a translator, and Pop's counsel dropped this contention at oral argument. Moreover, the record indicates that Pop had the benefit of a translator during this testimony before the Immigration Judge.

But even if Pop's testimony is accepted in its entirety, he has only established three incidents of physical abuse by the government. The first incident involved a detention for questioning which took place in 1984, and did not relate to his religious affiliation or that of his family. The second incident was a beating in 1988 by government officials when he attempted to leave Romania, also apparently unrelated to Pop's religious affiliation and unmentioned in his asylum application. The third incident involved Pop's interrogation and beating at the hands of government officials in 1990, while he was searching for his brother, which Pop alleged in his application, but was unmentioned in his testimony. In fact, Pop has not alleged a single case of government harassment that had any tie to his own religion or membership in any particular social group. Moreover, these isolated cases of harassment do not constitute "persecution" for purposes of Pop's asylum claim. *Yadegar–Sargis v. INS*, 297 F.3d 596, 602 (7th Cir.2002) (isolated incidents do not rise above harassment).

Second, Pop's motion cited a "mistake" in the transcript relating to the date when an alleged beating took place. Apparently the hearing transcript states that Pop attempted to flee Romania in 1980, though the correct year was actually 1988. Pop failed to explain to the BIA why this typographical error presented any reason to reconsider its decision, and he does not develop this line of argument on appeal.

Third, Pop's motion contested the BIA's interpretation of one particular piece of evidence, specifically, the 2000 Annual Report on Religious Freedom: Romania, which established that Jehovah's Witnesses had been persecuted in one town. Ultimately, this evidence is relevant to the BIA's conclusion that conditions in Romania have improved dramatically since the 1980s, when most of Pop's alleged problems with the government took place. Significantly, the repressive government of Nicolae Ceaucescu fell in 1990, and in 2000 the Romanian Supreme Court officially recognized the Jehovah's Witnesses as a religion. Moreover, this court has repeatedly held that country conditions in Romania have changed to "eliminate any well-founded fear of future persecution." *See Pop v. I.N.S.*, 279 F.3d 457, 461–62 (7th Cir.2002) (collecting cases). The decisions of the Immigration Judge and BIA to determine that Romania has experienced changes in its country conditions can not constitute an abuse of discretion.

Because all three of Pop's arguments are without merit, we AFFIRM the decision of the Board of Immigration Appeals.