Jorge Anibal Esquivel DUARTE, et. al., Petitioners,

v.

John ASHCROFT, Attorney General, Respondent.

No. 02–3354.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 16, 2003.

Decided Nov. 17, 2003.

Mark S. Davidson, Davidson & Schiller, Chicago, IL, for Petitioners.

George P. Katsivalis, Department of Homeland Security, Office of the District Counsel, Chicago, IL, Allen W. Hausman, Department of Justice, Washington, DC, for Respondent.

Before FLAUM, Chief Judge, DIANE P. WOOD, and WILLIAMS, Circuit Judges.

## ORDER[1]

Jorge Esquivel, his wife, and their two children are Columbian citizens. In 1995,

---

1. Petitioner named the Immigration and Naturalization Service (INS) as the respondent in this case. As the INS no longer exists as an independent agency, Attorney General John Ashcroft has been listed in the caption as the respondent. *See* 8 U.S.C. § 1252(b)(3)(A);

while the Esquivels were living in Bogota, Columbia, Jorge's brother Jairo was murdered. The police determined that the perpetrators were members of Los Canecos, a large-scale criminal gang. According to Mr. Esquivel, he was informed by the police that they would be unable to protect his family if he continued to investigate his brother's murder. Undaunted, Mr. Esquivel convinced the government to prosecute his brother's killers.

During the trial, the Esquivels moved twice, allegedly in response to numerous threats against Mr. Esquivel, who testified against members of Los Canecos despite his fear for his safety and the safety of his family. In August 1998, four defendants were convicted of his brother's murder, while eight others were acquitted. The Esquivels' victory was reported in the papers. A few months later, a stranger approached Mr. Esquivel's children at school and asked if they were "Esquivel children." This incident led Mr. Esquivel to take his children out of school for their protection. Mr. Esquivel also stopped going to his store, and instead conducted his leather manufacturing business by phone. In 1999, the Esquivels came to the United States.

An Immigration Judge (IJ) denied their application for asylum and withholding of removal in 2001.[2] That same year, after allegedly receiving numerous threatening phone calls relating to her husband's death, Jairo's widow was struck and killed by a car in Columbia. The BIA issued an affirmance without opinion in 2002, and the Esquivels appeal. As there is substantial evidence to support the IJ's decision, the Esquivels' petition for review is denied.

*Dandan v. Ashcroft,* 339 F.3d 567 (7th Cir. 2003). Also, though the petitioner testified that his full name is Jorge Anibal Esquivel Duarte, he refers to himself as Esquivel; thus, the court will also refer to him as Mr. Esquivel.

## II. ANALYSIS

■ We review decisions of the immigration courts denying asylum for substantial evidence. *Ahmad v. INS,* 163 F.3d 457, 461 (7th Cir.1999). Under this standard we will uphold the BIA's decision so long as it is supported by "reasonable, substantial, and probative evidence when looking at the administrative record as a whole." *Id.* The Esquivels seek asylum premised on the theory that Mr. Esquivel belongs to a particular social group composed of "individuals who have provided witness testimony against paramilitary groups involved in terrorist activities who take direction from corrupt military officials in Columbia." To qualify for asylum based on membership in a particular social group, Mr. Esquivel must: (1) identify a particular social group; (2) establish that he is a member of that group; and, (3) establish that his well-founded fear of persecution is based on his membership in that group. *Lwin v. INS,* 144 F.3d 505, 509 (7th Cir.1998). "Social groups" protectable under the Immigration and Nationality Act (INA) share characteristics which they are unable to change by their own actions or should not be required to change as a matter of conscience. *Id.* (citing *In Matter of Acosta,* 19 I. & N. Dec. 211, 233, 1985 WL 56042 (BIA 1985)). A petitioner's fear of persecution based on group membership must be both genuine and objectively reasonable. *Id.*

While the IJ recognized that Mr. Esquivel had a subjective fear of returning to Columbia, he denied the asylum request on the following four grounds: (1) Mr. Esquivel was not a member of the particular

**2.** The Esquivels state a derivative asylum claim based on Mr. Esquivel's fear of persecution; thus, we will discuss Mr. Esquivel's substantive claim.

social group he identified, as he had not offered evidence that Los Canecos was either a paramilitary group or a criminal gang that takes its instructions from corrupt military officials; (2) even if the social group was broadened to include all witnesses in criminal cases against gang members in Columbia, Mr. Esquivel had not shown that "all group members have been targeted for persecution;" (3) Mr. Esquivel failed to show that the Columbian government was unwilling to protect him; and, (4) Mr. Esquivel failed to show that he had a well-founded fear of persecution country-wide, as he did not provide evidence that the Los Canecos gang operates throughout Columbia.

We find the IJ's first basis for denial fatal to Mr. Esquivel's asylum claim as he is not a member of the social group he himself sculpted. Mr. Esquivel failed to prove that Los Canecos is a "paramilitary group involved in terrorist activity" or that its members "take direction from corrupt military officials in Columbia." The IJ determined (based on the evidence supplied by Mr. Esquivel) that Los Canecos was composed of organized bandits and hoodlums unaffiliated with the Columbian government. The IJ specifically found that the "respondent testified that the death of his brother was simply because he attempted to collect a debt owed his business."[3] Thus, though Mr. Esquivel testified against a criminal group regarding his brother's murder, he did not testify against a paramilitary group with ties to the Columbian government.

■ Concerning the IJ's second basis for denial, Mr. Esquivel correctly highlights the fact that the IJ's reasoning is flawed, in that asylum applicants are not required to show that "all" group members have been targeted for persecution.[4] Even with this error, however, the IJ's decision must stand because Mr. Esquivel has not proven his membership in the social group he defined. Thus, Mr. Esquivel was not prejudiced by this incorrect statement, making the IJ's error harmless. *See Ciorba v. Ashcroft*, 323 F.3d 539, 544 (7th Cir.2003).

We also disagree with the IJ's decision to widen the potential social group to "all witnesses in criminal cases against gang members in Columbia." While we recognize and applaud Mr. Esquivel's willingness to testify and bring his brother's murderers to justice, he has only demonstrated a fear of persecution from a diffuse criminal gang, as opposed to the type of focused group membership recognized and protected by the INA. In *Ahmed v. Ashcroft*, this court reasoned that claims for asylum based on group membership "must also be examined to determine whether the danger flows from an ongoing violent struggle affecting the population in a relatively undifferentiated way or if danger exists on account of a protected ground;

---

**3.** The petitioners apparently concede that Mr. Esquivel is not a member of the social group that they themselves articulated to the IJ, stating that "[t]he Immigration Judge's rejection of Los Canecos as a paramilitary group is based upon the IJ's finding that there was a lack of evidence on this subject and is not challenged by Petitioner." Petitioners' Brief at 6.

**4.** The INA defines a "refugee" as

  any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any

country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a wellfounded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion....

8 U.S.C. § 1101(a)(42). The statute seeks an individualized analysis rather than focusing on all members of a potential social group.

only the latter will suffice." 348 F.3d 611, 618–19 (7th Cir.2003). In this case, Mr. Esquivel's attempt to differentiate his situation from that of any other Columbian citizen who faces rampant gang violence is unavailing. Thus, Mr. Esquivel has not met his burden of establishing membership in a protectable social group and his claim must fail.[5]

▪ Finally, Mr. Esquivel questions the propriety of the BIA's affirmance without opinion (AWO) procedure. This procedure allows a case to be reviewed by a single member of the appeals board, as opposed to the traditional three-member review, when a case: (1) is correctly decided; (2) contains harmless errors; (3) is squarely controlled by existing BIA precedent and does not involve a novel fact situation; or, (4) raises insubstantial factual or legal questions. 8 C.F.R. § 3.1(e)(4)(i)(A). However, this court has held that "our ability to conduct a full and fair appraisal of the petitioner's case is not compromised, and the petitioner's due process rights are not violated" by the AWO procedure as we look directly to the IJ's determinations.[6] *Ciorba v. Ashcroft*, 323 F.3d 539, 546 (7th Cir.2003); *Albathani v. I.N.S.*, 318 F.3d 365, 377 (1st Cir.2003).

### III. CONCLUSION

For the foregoing reasons, the petition for review is DENIED.

---

**5.** The IJ also correctly found that Mr. Esquivel was unable to prove that the Columbian government was unable or unwilling to control the Los Canecos gang. In fact, the evidence shows that several gang members were jailed for his brother's murder while others were jailed for theft. These actions directly rebut the notion that the government was complicit or indifferent to the activity of the Los Canecos.

**6.** Mr. Esquivel also seems to be arguing that, due to the IJ's one misstatement, the BIA was required to review his claim in its entirety and erred by affirming without opinion. As we find that the error in this case was indeed harmless and that the IJ's decision was correctly decided, it was not error for the BIA to employ the AWO procedure.