Shi Tu ZHENG, Fang Zheng, Ming Li Tang, Yan Lin, Bi Xian Zheng, Zhou Weng, and Jian Guo Hu, Petitioners,

v.

John ASHCROFT, Attorney General of the United States,* Respondent.

Nos. 02–3961, 03–1298, 03–1609, 03–2267, 03–2862, 03–3493.

United States Court of Appeals, Seventh Circuit.

Submitted May 17, 2004.**

Decided May 28, 2004.

---

* We substitute Attorney General John Ashcroft as the proper respondent to the petition in case no. 02–3961. *See* 8 U.S.C. § 1252(b)(3)(A).

** After an examination of the briefs and the records, we have concluded that oral argument is unnecessary. Thus, these appeals are submitted on the briefs and the records. *See* Fed. R.App. P. 34(a)(2).

Li Nan Chiang, Chicago, IL, for Petitioners.

George P. Katsivalis, Department of Homeland Security, Office of the District Counsel, Chicago, IL, Arthur L. Rabin, Jacqueline R. Dryden, Thomas C. Lederman, Douglas E. Ginsburg, Thomas K. Ragland, Richard M. Evans, Department of Justice, Washington, DC, for Respondent.

Before POSNER, EASTERBROOK, and DIANE P. WOOD, Circuit Judges.

## ORDER

We have consolidated these six petitions for review of orders of the Board of Immigration Appeals because all share several important characteristics. All of the petitioners are asylum applicants from the People's Republic of China, and all except one are from the same region—the Fujian province in southeastern China. Each petition involves a claim that a woman was forced to undergo an abortion or other medical procedure because she violated China's "one-child" policy. *See generally* Stanford M. Lin, *China's One–Couple, One–Child Family Planning Policy as Grounds for Granting Asylum,* 36 Harv. Int'l L.J. 231 (1995). Each petitioner's application was denied because an immigration judge found his or her testimony incredible, and the BIA affirmed in each case. Most importantly though, all of these petitioners are represented by the same attorney, Li Nan Chiang.

Each petitioner alleged similar facts in support of his or her asylum application.

Three of the petitioners—Fang Zheng, Yan Lin, and Bi Xian Zheng—are women who claim that they were forced to undergo abortions or required to have an intrauterine device implanted. Lin also claims that her sister had a forced abortion. Three more petitioners—Shi Tu Zheng (Fang Zheng's husband), Ming Li Tang, and Jian Guo Hu—claim that their wives were forced or almost forced to undergo abortions.[1] The final petitioner, Zhou Weng, claims that his girlfriend was forced to undergo an abortion. Each petitioner claims that he or she will be fined or arrested if forced to return to China, and each female petitioner claims that she fears that she will be sterilized or forced to have an IUD implanted upon her return. Most of these appeals involve challenges to the adverse credibility findings, but we begin with an appeal that raises other issues.

### Shi Tu Zheng and Fang Zheng

■ Shi Tu and Fang Zheng are husband and wife. The Zhengs claim that officials tried to force Fang to have an abortion, and that she was forced to have an IUD inserted after she gave birth in secret. The immigration judge found their testimony incredible because Shi Tu claimed that his wife was arrested and that the IUD was inserted by force, but Fang testified that she agreed to the procedure and was not arrested or physically coerced. The IJ also noted that the couple presented no corroborating evidence, and that the State Department's country report contradicted their testimony. Although the Zhengs' appeal purports to challenge the denial of both of their applications, the brief makes no mention of Fang's case (which does not appear to be

derivative to Shi Tu's), and she has therefore forfeited review of the BIA's decision. *See United States v. Feinberg,* 89 F.3d 333, 340 (7th Cir.1996).

■ Shi Tu's appeal fares little better. He argues only that his due process rights were violated because the IJ failed to grant him additional time to apply for a suspension of deportation (now called "cancellation of removal," *see* 8 U.S.C. § 1229b). We have no jurisdiction to decide this claim because Shi Tu never appealed to the BIA the IJ's refusal to grant him an additional extension of time and has therefore failed to exhaust his administrative remedies. *See* 8 U.S.C. § 1252(d)(1); *Useinovic v. INS,* 313 F.3d 1025, 1035 (7th Cir.2002).

Even if the issue was properly before us, it would be frivolous. Attorney Chiang first told the IJ in October 1998 that Shi Tu would seek a suspension of deportation, but Shi Tu never filed an application despite nine months of repeated reminders from the IJ. Finally, in July 1999, the IJ asked Chiang if he desired another extension of time for Shi Tu to file an application. Chiang responded that Shi Tu's job as a chef at his family's restaurant made him too busy to file the application and that the IJ should consider the application abandoned. Shi Tu cannot assert as error the IJ's decision to do as his own lawyer requested.

The remaining petitions address the substance of the IJs' and BIA's credibility determinations.

### Ming Li Tang

■ Tang claims that his wife was forced to have abortions in 1993 and 1997 and was required by government officials

---

**1.** We note that Chiang has adopted the western custom of placing the family name last for his clients' names and also for his own name. The Chinese custom is to place the family name first.

to have an IUD inserted. He also claims that Chinese officials will punish him because he threw an official down a staircase while trying to stop the 1997 abortion. Tang came to the U.S. in 1998, leaving his wife behind in China. The IJ found Tang's testimony incredible because Tang gave contradictory testimony about the date of the first abortion; he claimed the abortion took place at one hospital but submitted records from a different hospital; his testimony was contradicted in several ways by a purportedly official document that he himself submitted; he testified on direct examination that his wife was unemployed in China but testified on cross-examination that she has a job; and he mentioned the alleged abortions to immigration authorities only after they instituted removal proceedings.

The argument section of Tang's brief is less than two pages long and fails to provide citations either to the record or to supporting authority. As best we can tell, Tang argues that the IJ should not have considered his failure to testify consistently about the date of the first abortion or about his wife's employment status in making an adverse credibility finding. To the extent that Tang makes any legal argument, he has chosen a very poor one because we will not substitute our interpretation of the facts for that of the IJ. *See Krouchevski v. Ashcroft*, 344 F.3d 670, 673 (7th Cir.2003). The IJ's adverse credibility finding is well-supported by the multiple inconsistencies in Tang's testimony and provides substantial evidence for the administrative decision.

### Yan Lin

■ Lin entered the United States using a fraudulent passport in October 1999. Immigration officials discovered the forgery upon her arrival, and Lin told immigration authorities at the airport that she feared she would be arrested if she returned to China because she had fought with family planning officials after her older sister became pregnant for a second time and that she had pushed an official down a flight of stairs during the struggle. When Lin filed her application for asylum in October 2000, she stated that the official had "hurt his knee" when he fell down the steps, that she had been arrested for pushing him, and that she escaped from jail when her family bribed a "janitor." At her removal hearing, Lin testified that the official had broken his leg in the fall, and that her family had bribed the "guards" at the jail to allow her to escape. In her asylum application, Lin also added an allegation that she herself had been forced to have an abortion approximately two years before leaving China.

The IJ disbelieved Lin's testimony because her failure to mention her own alleged abortion to the immigration officials at the airport was a "glaring omission," and because there were "glaring inconsistencies" in her testimony concerning the incident in which she allegedly threw the official down the stairs. The IJ also noted that the State Department's country report says that forced abortions are rare in Lin's region, the Fujian province. An adverse credibility finding supported by " 'specific, cogent reasons' that 'bear a legitimate nexus to the finding,' " *Capric v. Ashcroft*, 355 F.3d 1075, 1086 (7th Cir. 2004) (quoting *Ahmad v. INS*, 163 F.3d 457, 461 (7th Cir.1999)), provides substantial evidence for the IJ's decision.

Lin seems to argue that the IJ relied too heavily on the State Department's report in evaluating her testimony. Although we have suggested that immigration judges treat these country reports with "healthy skepticism," *Galina v. INS*, 213 F.3d 955, 959 (7th Cir.2000), the IJ here did not give the country report undue weight. Lin's

brief fails to address the inconsistencies concerning her account of the alleged struggle with the officials and mentions only in passing her failure to report her own alleged abortion to the immigration authorities at the airport. But when an applicant for asylum makes significant new factual allegations that were not initially reported to immigration officials, an IJ may draw negative inferences from those omissions. *See Oforji v. Ashcroft,* 354 F.3d 609, 614 (7th Cir.2003). Likewise, Lin's testimony about the altercation with the family planning official differed in significant respects from her asylum application and her airport interview, and the IJ was entitled to rely on those discrepancies. *See Krouchevski,* 344 F.3d at 673.

### Bi Xian Zheng

■ Bi Xian Zheng entered the United States without inspection in September 1998. At her removal hearing, Zheng candidly admitted that she and her "former" husband had tried to participate in a marriage fraud. The plan was for Zheng's husband to enter the U.S., obtain a divorce, and send an American citizen back to China to marry Zheng so she could enter the U.S. as his wife. The scheme failed, however, and Zheng instead paid a smuggler to bring her to the U.S. so she could rejoin her ex-husband, with whom she now lives. After her illegal entry into the country was discovered, Zheng applied for asylum, claiming that she had been forced to have an abortion in 1990 and that she fears that she will be sterilized because she now has three children. In her testimony at the removal hearing, Zheng added allegations that family planning officials damaged her home and arrested her mother after Zheng gave birth to her second child. The IJ found that Zheng was not credible because she failed to mention the damage to her house or the arrest of her mother in her asylum application and

because she admitted that she tried to participate in a fraudulent marriage to enter the United States. Furthermore, he found her testimony inconsistent with the State Department's profile for China, which reported that forced abortions are rarely performed in Fujian province.

As best we can tell, Zheng argues that her testimony was consistent with the country report. But the adverse credibility finding here is well-supported by other facts in the record that are unrelated to the country report. Zheng's brief omits any mention of her failure to include in her asylum application anything about her mother's alleged arrest and the purported damage to her house, *see Oforji,* 354 F.3d at 614 (new factual assertions that were not contained in original application may support adverse credibility finding), or her participation in an attempted marriage fraud, both of which the IJ and the BIA properly considered.

### Zhou Weng

■ Weng has twice entered the United States using a forged U.S. passport. The first time he tried to enter the country in January 2000, he claimed that he was a practitioner of Falun Gong and would be persecuted if he returned to China. Immigration officials were unconvinced and immediately sent Weng back to China. Weng now says he no longer practices Falun Gong and was never punished for practicing it. In August 2002, Weng again entered the U.S. and, after his forged passport was discovered, applied for asylum on the theory that family planning officials discovered that he was living illegally with his girlfriend, Weng Qing, and that she was pregnant.

Weng claims that officials took Qing to a birth control office in August 2000, administered a pregnancy test, and then immedi-

ately performed an abortion on her when they learned she was pregnant. Weng testified that he was jailed for 10 days after he tried to stop the abortion by knocking over a table at the family planning office. In July 2002, Weng left Qing behind and departed for the United States because he says he feared that he would be punished for Qing's failure to take required pregnancy tests. In support of his testimony, Weng presented two purportedly official documents stating that Qing had undergone an abortion and was required to report for monthly pregnancy tests. Weng testified that he did not know the origin of these documents but thought that Qing had probably sent them, though he had not been in contact with her since leaving China and had no idea how she got them or if in fact it was Qing who had sent them.

The IJ disbelieved Weng's testimony and added that, even if his allegations were true, Weng had established neither past persecution nor a credible fear of future prosecution. The IJ based his determination on Weng's "vague and unclear" testimony about why he suddenly decided to depart China nearly two years after the alleged abortion, and why *he*, rather than Qing, would be punished for her refusal to take the pregnancy tests, especially since Weng claimed to have suffered no further consequences after his release from jail. The IJ also questioned the authenticity of Weng's documents, and noted that the country report contradicted Weng's testimony because it said that childless women like Qing are generally not forced to undergo abortions even if they are unmarried. Finally, the IJ pointed to Weng's two attempts to enter the U.S. using different forged American passports and said that Weng's deliberate misrepresentations of his identity and citizenship bore adversely on his credibility.

Weng's brief in this court essentially restates his version of the facts underlying his claim, while presenting a poorly developed challenge to the IJ's credibility finding. Weng's brief does not mention the IJ's finding that "[t]his Court does not believe that even if the respondent's underlying facts are true, that the respondent [has] shown that he suffered persecution because of the alleged 'involuntary abortion' by authorities to his girlfriend." He has therefore forfeited any challenge to that independent basis for denying his application, *see Feinberg,* 89 F.3d at 340, and accordingly his petition fails.

Even if we were to address Weng's challenge to the IJ's credibility determination, we would be unpersuaded. There was ample basis for the IJ's determination that Weng's testimony was false—Weng does not address many of the IJ's stated reasons and makes at best a cursory challenge to others. Weng says that the IJ erred in considering his two attempts to enter the U.S. using forged passports because he eventually admitted to the immigration officials that his second passport was a fake. But the IJ's point was that Weng admitted the forgery only after it was discovered, and that this was his second attempt to enter the country by falsely claiming to be a U.S. citizen. Weng also says that the IJ should not have relied on the fact that he could not explain the origin of his supporting documents. The IJ did not find either that the documents *were* forged or that Weng knew they were forged, and thus the questionable authenticity of the documents more appropriately goes to the issue of whether Weng's testimony was corroborated rather than whether it was credible. *See Kourski v. Ashcroft,* 355 F.3d 1038, 1039 (7th Cir.2004). But even assuming this was error, the IJ's credibility determination is supported by ample other evidence.

### Jian Guo Hu

■ Hu entered the U.S. illegally in September 2000. He asserts that his wife was forced to have an abortion in May 1999 and that he and his wife were fined 20,000 yuan (approximately $2,400) for an illegal birth. Hu testified that he fears he will be arrested and imprisoned if he returns to China. In his asylum application, Hu claimed that he "angrily went to argue" with the family planning officials after his wife's abortion. On direct examination at the removal hearing, he claimed that he was involved in "a very fierce, almost a fight" with the officials and that he overturned a table at the family planning office. On cross-examination, he testified that there *was* a fight and that he may have injured some of the officials during the struggle.

The BIA held that Hu's testimony was not believable because his account of the alleged fight with the officials changed several times. In his asylum application, Hu reported only an argument, but on direct examination he recounted a near-fight during which he knocked over a table, and on cross-examination he alleged that there was a fight that was so severe that he may have injured an official. Hu's brief on appeal claims that there were only "minor" as opposed to "real" inconsistencies in his testimony, but does little more than restate his version of the facts. This tactic is again unpersuasive because a credibility determination is a factual finding to which we accord substantial deference, *Pop v. INS*, 270 F.3d 527, 530–31 (7th Cir.2001), and we will not reinterpret the facts in Hu's favor, *see Krouchevski*, 344 F.3d at 673. As we have noted, when an applicant for asylum makes new factual allegations that were not initially reported to the immigration authorities, the BIA may consider those allegations to be solely an attempt by the applicant to improve his case, and may hold those new allegations against the applicant's credibility. *See Oforji*, 354 F.3d at 614. The BIA was entitled to treat Hu's escalating account of the alleged fight with the family planning officials as evidence that he was making things up as he went along.

### Conclusion

All of the petitions for review are DENIED.