**Mevlan HASANI and Pashe Hasani, Petitioners,**

v.

**John D. ASHCROFT, Respondent.**

No. 03–1327.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 6, 2004.

Decided Oct. 29, 2004.

Before Hon. WILLIAM J. BAUER, Hon. JOHN L. COFFEY, and Hon. TERENCE T. EVANS, Circuit Judges.

## ORDER

Mevlan and Pashe Hasani, Albanian citizens, petition for review of a final order of removal issued by the Board of Immigration Appeals denying their applications for asylum and withholding of removal. The immigration judge rejected their claims, finding that Mevlan Hasani was totally incredible, and that he could therefore not support the burden of proof. Because the IJ's credibility determination is not in error, we deny the petition for review.

Mevlan Hasani and his wife Pashe Hasani crossed the Canadian border into the United States without documentation in December 1998, in an attempt to emigrate from Albania. The following August, the Immigration and Naturalization Service issued notices to appear to the couple. The Hasanis conceded removability and applied for asylum, withholding of removal, and relief under the Convention Against Torture based on alleged persecution in Albania caused by Mevlan Hasani's political opinions and actions. At the subsequent hearing in December 2001, Mevlan Hasani introduced a statement indicating that he had been subjected to political violence due to his membership in the Albanian Democratic Party, and that he feared future harm if he returned to Albania.

At the hearing, Mevlan Hasani (hereafter simply Hasani, as Pashe Hasani's claim for relief is derivative and presents no separate issues) submitted various official documents and made statements detailing his involvement in the Democratic Party. Hasani specifically testified that he faced violent retribution stemming from his role as a poll-watcher in a local election in Tepelene, Albania in 1996. Hasani explained that he observed the election and signed a report documenting procedural irregularities, and that as a consequence the Socialist Party persecuted him throughout 1997 and 1998. According to Hasani, this persecution included beatings, death threats, and arbitrary arrests. He asserts that following one of these arrests, in 1998, he reported his injuries to the Democratic Party at its headquarters, where Party members photographed his injuries before he sought treatment at a hospital. This account is consistent with the U.S. Department of State's contemporary reports on human rights in Albania, which noted "sporadic cases" of police beating political party representatives and others following the 1997 elections. *See* 1997 Human Rights Report, U.S. Dept. of State, Bureau of Democracy, Human Rights, and Labor, *at* http://www.state.gov/www/global/human_rights/1997_hrp_report/albania.html. In 1998, the State Department noted reports from the Democratic Party of official harassment of its members, as well as credible accounts of arbitrary arrests and deaths in custody. *See* 1999 Human Rights Report, U.S. Dept. of State, Bureau of Democracy, Human Rights, and Labor, *at* http://www.state.gov/www/global/human_rights/1999_hrp_report/albania.html. In support of his claims of persecution, Hasani produced documentation of his harassment from 1996 through 1998, including the photograph of his injuries, a hospital record of his treatment for those injuries, and detention orders and 'orders to appear' issued against him by Albanian criminal justice authorities.

These documents were instrumental in the disposition of the case, as the IJ found that they, and Hasani, were "entirely incredible." The IJ relied instead on a consular investigator's report, which showed that the Hasani's documents were forgeries. The report was generated by the American Embassy in Albania at the request of the Immigration and Naturalization Service. It presents the findings of a consular investigator, who determined that

the summonses from the District Attorney, as well as two detention decrees and the report detailing treatment of Hasani's injuries at the hospital, were forgeries. The investigator arrived at this conclusion by interviewing the agencies that purportedly produced some of these documents, a subset of the overall folio that Hasani submitted. The agencies consulted by the investigator revealed that in each case the document in question was not reflected in official records. The IJ found the report persuasive and held that Hasani's evidence was "completely and entirely fraudulent," and that Hasani's testimony was "tainted and unbelievable."

The IJ held that Hasani "failed to meet the well-founded fear standard required for asylum," and the stricter standard for withholding of removal. The judge further noted that Hasani was not statutorily qualified for voluntary departure, as he lacked the means to secure his own passage out of the United States, and that he was unwilling to voluntarily depart in any event. The judge consequently ordered the Hasanis removed to Albania. The Hasanis appealed to the BIA, which "streamlined" the case and affirmed the immigration judge's order without opinion. The case comes to this court on appeal from the BIA's summary affirmance; as such, "the IJ's decision becomes that of the BIA for purposes of judicial review." *Georgis v. Ashcroft*, 328 F.3d 962, 966–67 (7th Cir. 2003).

On appeal Hasani primarily takes issue with the IJ's determination that he is not credible. He argues that the IJ erred in refusing his asylum claim because his testimony and documentary evidence met his burden of proof. He notes that the IJ relied on the consular investigator's report in rejecting his documents as forgeries and his testimony as incredible. His central argument is that the report is not sufficient to vitiate his credibility as it addresses only some of his documentary evidence; he further attacks the methodology of the report and alludes to bias on the part of the investigator himself. The report presents the conclusions of the investigator employed by the American consulate as to the provenance of two detention decrees and two summonses issued by the Tirana District Attorney's office, and a medical certificate attesting to Mevlan Hasani's treatment at the Central Military Hospital in Tirana. Each of these documents purportedly originated in 1998. Hasani did present several documents that the consular investigator's report did not dispute. These documents include a color photograph of injuries allegedly inflicted by Socialist Party supporters, arrest reports, and letters from the Democratic Party attesting to the abuse Hasani claims to have suffered. While these documents are unchallenged by the report, the government does not bear the burden of disproving each of Hasani's documents; once the IJ has determined that an alien has presented incredible testimony, then the alien must provide a convincing explanation for the discrepancy. *Capric v. Ashcroft*, 355 F.3d 1075, 1086 (7th Cir.2004).

A credibility determination in an asylum case has a direct impact on an applicant's burden of proof, and can therefore be dispositive. The testimony of a credible applicant may normally satisfy the burden of proof even without corroborating evidence; the uncontradicted testimony alone will suffice. *See id* at 1085. However, an IJ must determine whether an alien is credible. *See id.* If the IJ determines that the alien is incredible, "a convincing explanation of the discrepancies or extrinsic—and credible—corroborating evidence is required." *Id* at 1086 (citing *De Leon–Barrios v. INS*, 116 F.3d 391, 393–94 (9th Cir.1997)). An alien found to be incredible cannot therefore meet his burden of proof

without at least convincingly explaining discrepancies in the evidence. *Id.* It is enough, therefore, for some of Hasani's documents to be challenged as fraudulent; if the IJ determines that they are forgeries, the burden effectively shifts to Hasani to provide an explanation. If Hasani failed to explain any discrepancies, the report is sufficient to support the IJ's credibility determination.

Hasani did attempt to rehabilitate his documents, and otherwise cast aspersions on the report, by attacking the report's author, consular investigator Artan Ceci. At the hearing, Hasani's counsel obliquely referred to Ceci's connections to the Socialist party and the secret police, a 1994 drug conviction, and time spent as an illegal immigrant in Greece. Hasani himself directly accused Ceci of bias. None of these accusations, however, are supported by evidence.

Hasani's unsubstantiated assertions of bias do not compel a reversal of the IJ's credibility determination. The standard of review of these decisions is highly deferential, and a credibility determination should not be overturned except under "extraordinary circumstances." *Id.* at 1087 (quoting *Pop v. INS,* 270 F.3d 527, 531 (7th Cir. 2001)). So long as the IJ's decision is supported by "specific, cogent reasons," it should stand, even if substantial evidence would support a different outcome. *Ahmad v. INS,* 163 F.3d 457 (7th Cir.1999). Here, the IJ's determination is supported by the conclusions of the consular investigation. Hasani fails to present sufficient corroborating evidence to support his various claims for asylum, and as such, under this court's deferential standard of review the determination is affirmed.

Hasani makes two subsidiary arguments in support of his claim for asylum apart from the credibility determination. First, he asserts that the IJ and the BIA did not sufficiently articulate their reasoning, warranting reversal on due process grounds. Hasani asserts that the immigration judge ruled without issuing a "specific, cogent opinion," and that she "failed to even discuss Petitioner's credibility or even the basis for her decision to deny him asylum." Hasani cites *Guchshenkov v. Ashcroft,* 366 F.3d 554 (7th Cir.2004), among other of our cases, for the proposition that an IJ's ruling and the rationale behind it must be articulated. This argument is without merit, however, as the IJ did issue a 10–page opinion that specifically deals with Hasani's credibility and the denial of his asylum claim. While the BIA did fail to articulate its rationale, it is not required to do so. *Georgis,* 328 F.3d at 967.

Hasani next attacks the BIA's decision to streamline its appellate review of the IJ's ruling, but the decision was within the Board's discretion. The BIA may streamline a case when the IJ's decision is available for direct review without creating justiciable issues on appeal to this court. "Since we review directly the decision of the IJ when a case comes to us from the BIA pursuant to [8 C.F.R.] § 1003.1(a)(7), our ability to conduct a full and fair appraisal of the petitioner's case is not compromised, and the petitioner's due process rights are not violated." *Id.*

Hasani also makes specific arguments as to his eligibility for protection under the Convention Against Torture. Hasani's arguments as to the Convention are moot; the evidentiary requirements for protection under the Convention are more stringent than with general asylum claims. "[An] applicant who fails to establish eligibility for asylum necessarily cannot satisfy the more stringent requirements for withholding of removal ... under the Torture Convention." *Ahmed v. Ashcroft,* 348 F.3d 611, 615 (7th Cir.2003) (citing *Dandan v.*

*Ashcroft*, 339 F.3d 567, 575 n. 7 (7th Cir. 2003)).

Hasani finally asserts that the IJ improperly denied him voluntary departure. The hearing transcript, however, indicates that Hasani withdrew his application for voluntary departure; his attorney stipulated at the hearing that "[Hasani] does not wish to pursue voluntary departure." The distinction is moot; if the petition for voluntary departure was withdrawn, then there is nothing to appeal. If the IJ denied it, then this court may not review the denial: "This court lacks jurisdiction to review an appeal from denial of a request for an order of voluntary departure." *Sofinet v. INS*, 196 F.3d 742, 748 (7th Cir. 1999) (citing 8 U.S.C. § 1229c(f) (1999)).

In any event, the Hasanis are statutorily ineligible for voluntary departure because they were not physically present in the United States for at least one year by the time the notice to appear is received. *See* 8 U.S.C. § 1229(b)(1)(A). The Hasanis entered the United States at the very end of 1998, and received their notice to appear in August of 1999, less than the requisite one-year period.

The petition for review is DENIED.